(64 South. 286.)

No. 19,729.

NESSEN v. CITY OF ·NEW ORLEANS.

(Jan. 19, 1914.)

*(Syllabus by the Court.)*

1. MUNICIPAL CORPORATIONS (§ 755\*) — OB-
STRUCTION OF STREETS—LIABILITY FOR DAM-
AGES.

Section 14 of Act No. 45 of 1896, requires
the city of New Orleans, "to keep open and free
from obstructions all streets." The right of
the citizen to recover damages for injuries sus-
tained by reason of the failure of a municipal
corporation to discharge the mandatory duty
thus imposed is beyond question. McCormack
v. Robin et al., 126 La. 598, 52 South. 779,
139 Am. St. Rep. 549.

[Ed. Note.—For other cases, see Municipal
Corporations, Cent. Dig. §§ 1587, 1589, 1590;
Dec. Dig. § 755.\*]

2. MUNICIPAL ORDINANCES—WARNING OF OB-
STRUCTIONS.

The ordinances of the city of New Orleans
require excavations and obstructions in public
streets to be indicated by red lights during the
night, in order to prevent accidents liable to
otherwise happen.

3. MUNICIPAL CORPORATIONS (§ 794\*) — OB-
STRUCTION OF STREETS—DUTY TO WARN.

The stretching of wire ropes along a public
thoroughfare a few feet above the level of the
pavement creates, especially at night, a dan-
gerous obstruction, of which the public should
have timely notice and warning by proper dan-
ger signals.

[Ed. Note.—For other cases, see Municipal
Corporations, Cent. Dig. § 1653; Dec. Dig. §
794.\*]

4. MUNICIPAL CORPORATIONS (§ 821\*) — OB-
STRUCTION OF STREETS—CONTRIBUTORY NEG-
LIGENCE.

A citizen has the right to assume that the
street is in a reasonably safe condition for
travel, and is not, as a matter of law, guilty of
negligence in attempting to run across the
street, in the usual manner in order to catch
a car.

[Ed. Note.—For other cases, see Municipal
Corporations, Cent. Dig. §§ 1745–1757; Dec.
Dig. § 821.\*]

5. MUNICIPAL CORPORATIONS (§ 775\*) — OB-
STRUCTION OF STREETS—PERSONAL INJURIES
—LIABILITY OF CITY.

The city of New Orleans is responsible in
damages for a death of a citizen, who, at night,
without notice or knowledge of the existence of
the obstruction, ran against a wire rope placed

in the street by direction of the municipal au-
thorities, and was thereby mortally injured.

[Ed. Note.—For other cases, see Municipal
Corporations, Cent. Dig. § 1630; Dec. Dig. §
775.\*]

6. MUNICIPAL CORPORATIONS (§ 821\*) — OB-
STRUCTION OF STREETS—DEATH OF PEDES-
TRIAN—CONTRIBUTORY NEGLIGENCE—QUES-
TION FOR JURY.

In such a case, the question of contribu-
tory negligence on the part of the deceased is
one peculiarly within the province of the jury.

[Ed. Note.—For other cases, see Municipal
Corporations, Cent. Dig. §§ 1745–1757; Dec.
Dig. § 821.\*]

Appeal from Civil District Court, Parish
of Orleans; Thos. C. W. Ellis, Judge.

Action by Mrs. Florence Nessen, individual-
ly and as tutrix, against the City of New Or-
leans. From judgment for plaintiff, defend-
ant appeals. Affirmed.

I. D. Moore, City Atty., and John J. Reil-
ley, Asst. City Atty., both of New Orleans,
for appellant. H. W. Robinson and E. M.
Stafford, both of New Orleans, for appellee.

LAND, J. William Martin, about 8:15 p.
m. on February 12, 1912, left his place of
business near the corner of Carondelet and
Canal streets, and, while hurrying to catch
a car, ran against a small wire rope, which
had been strung on posts along the outer
edge of the sidewalk in Canal street at the
instance of the municipal authorities of the
city of New Orleans.

The wire rope was stretched several feet
above the level of the sidewalk. Martin fell
over the rope, and struck the pavement with
such force as to cause a dislocation of the
bones of his neck. Martin expired in a taxi-
cab while on his way to his home.

Martin's widow and minor children insti-
tuted this suit to recover damages in the
amount of $25,000.

Petitioners represent that the wire rope
was intended to keep back crowds of persons
while the carnival processions were passing·
along Canal street; that the city was grossly
negligent in erecting said barrier four days

before any of the expected parades; that the said rope was made of galvanized wire of neutral tint, difficult to see by day, and impossible to see in the dusk or at night; that obstructions of streets are prohibited by city ordinance, unless distinctly marked so as to indicate danger; that the obstruction in question could have been made distinguishable by placing on it cloths of bright color, which was done later in the same week; and that neither the city council nor any of its officers or agents had the power to obstruct said street.

The defendant, after pleading the general issue, specially averred as follows:

"Respondent avers that in the exercise of its police power it did cause to be constructed a wire rope along the principal streets of the city of New Orleans on or about the 12th day of February, 1912; that the stretching of this wire rope during the Mardi Gras season was in the interest of the general public, in which the city of New Orleans had no pecuniary interest, and, instead of being a negligent act, the officials of the city of New Orleans had every reason to believe it was a wise and prudent forethought to protect the general public and preserve the order and discipline of the Mardi Gras parades."

"Respondent further shows that, being an old resident of the city, the decedent should have anticipated meeting with the temporary obstruction in question, and that his failure, at the time, to exercise care and attention contributed to the accident and bars his right to recover."

The case was tried before a jury, which found a verdict for $10,000 in favor of the plaintiffs. The defendant filed a motion for a new trial, which was overruled, and judgment was rendered pursuant to the verdict.

The defendant has appealed; and the plaintiffs have answered, praying for an increase in the amount awarded by the verdict and judgment.

[4, 6] It was admitted that the diameter of the wire rope was $5/16$ of an inch, and that it was placed 41 inches above the sidewalk, and was made of galvanized steel wire, of a grayish color.

This wire was strung along the edges of the neutral ground in Canal street and along the edges of the sidewalks, for the purpose of keeping the street open for the usual parades during the Mardi Gras season.

The street intersections were left open for the convenience of the public. This custom of wiring the streets commenced in the year 1906, and has continued down to the present time.

The mayor testified as follows:

"Q. Why was it done?

"A. Because there were a great many accidents. I have lived here all my life, and I was identified with it and had the experience to see that there were a great many accidents occurring every year. People were trampled upon by the horses prancing in the parade, and there was a demand that something be done to control the crowds that appeared on the principal streets. * * * Well, we found it was absolutely necessary to do it. The carnival is one of the institutions of the city of New Orleans. It had to be carried on with the least detriment to the people. You could not successfully, with the growing population of the city, and the tremendous crowds that come here every year, hope to carry out these parades without a roping of the streets. * * * The city is put to an expense of between $700 and $800 per year to do it, and it does not get anything out of it, except the protection of its citizens."

The mayor further testified that he had seen crowds checked and controlled by means of wire ropes in Washington, D. C., and in the city of New York; and that this system in the city of New Orleans had caused no serious accident prior to the death of Martin, in 1912.

The city electrician testified that the wiring of the streets since 1905 has been done under his supervision; that the wiring in 1912 commenced on February 11th, and it was absolutely necessary to commence the work on that day in order to complete the wiring in time for the first parade on February 15th; and that it took about five days to wire the principal thoroughfares. The same witness testified that openings were left at all the street intersections, which are always well lighted at night.

Martin, on the evening in question, was

seen by two of his witnesses standing in front of the cigar store, corner of Carondelet and Canal streets, with an overcoat on his arm. Martin's intention was to take a Dauphine street car operating on the neutral ground in Canal street. The witnesses observed Martin start and run forward, as if to catch a car passing along the neutral ground. The witnesses did not see Martin strike the wire, but saw him prone on the pavement immediately beyond the wire. The circumstantial evidence shows that Martin ran against the wire with sufficient momentum to throw him over the obstruction and head foremost on the pavement. The coroner found on Martin's chest a bruised mark, some four or five inches long and half an inch or more wide, evidently caused by his impact with the wire. Martin was 39 years old, weighed about 200 pounds, and was in vigorous health at the time of the accident. The wire was placed on the edge of the sidewalk while Martin was engaged in his daily work in his place of business on Carondelet street very near its intersection with Canal. There is not a tittle of evidence to suggest that Martin had any knowledge of the wire obstruction in the latter street. He surely would not have run against the wire if he had received any notice of its existence. The late B. R. Forman, Esq., a distinguished member of the bar, testified that the wire even in daylight was difficult to perceive, and that he himself, on the day of the accident, had struck against the wire on three different occasions. The same witness further testified that his sight was good. It did not need the testimony of this witness to prove that it was far more difficult to see the wire at night.

Martin, if he had not been stopped by the wire obstruction, would have passed from the sidewalk to the intersection, a very short distance. In a similar case, this court held that a pedestrian is not confined to the regular crossing, but may use any part of the street, and may run to catch his car. Weber v. Union Dev. & Const. Co., 118 La. 77, 42 South. 652, 12 Ann. Cas. 1012.

A pedestrian has the right to assume that the street is reasonably safe for passage. Id.; McCormack v. Robin, 126 La. 598, 52 South. 779, 139 Am. St. Rep. 549. On the facts of the case, we would not be justified in setting aside the verdict on the issue of contributory negligence.

[1, 5] The remaining question is whether the defendant city was negligent in the premises.

In McCormack v. Robin, 126 La. 598, 52 South. 780, 139 Am. St. Rep. 549, the court said:

"The charter of the city of New Orleans requires it to 'keep open and free from obstruction all streets.' Act 45 of 1896, § 14. The right of the citizen to recover damages for injuries sustained by reason of the failure of a municipal corporation to discharge the mandatory duty thus imposed on it is beyond question."

The court cited a number of text-writers and of Louisiana cases to sustain the rule of law thus announced.

[2] The city ordinance requires all persons and corporations making excavations in the public thoroughfares, or depositing in any street or on any sidewalk heaps of brick, dirt, rubbish, or materials whatsoever, proceeding from the construction or demolishing of any building, or from any other cause whatsoever, to place a lamp with red light every night in the center of said excavation at every point of probable danger, and at the summit of said heap, which lamp must remain lighted during the night, so as to shed a sufficient light to make the incumbrance visible, in order to prevent accidents liable to otherwise happen. Flynn's Digest, art. 1439.

[3] It is hardly necessary to cite authorities to show that the stretching of wires or ropes along or across public thoroughfares low enough to strike passing pedestrians or ve-

hicles, constitutes an unauthorized and dangerous obstruction to public travel.

Cases similar to the one at bar have come before courts of other jurisdictions. In Arthur v. City of Charleston, 51 W. Va. 132, 41 S. E. 171, the Supreme Court of West Virginia held that the defendant was liable in damages for an injury to the plaintiff because of his having been tripped up by a rope stretched across the pavement of a street and fastened to a pole for the purpose of holding a wharf boat during a flood in the Kanawha river. The court held that the officials of the city were negligent in not barricading the street, or marking the obstruction in such manner as would have warned the public of the situation, and said:

"The negligence of the officials was not in allowing the rope to be placed there, but in permitting it to remain without proper warning to or protection of the traveling public. * * * The city has the right temporarily to allow obstructions on the streets and sidewalks for any lawful purpose; but while they remain there the traveling public should have notice and warning thereof."

In the case of Kleopfert v. City of Minneapolis, 90 Minn. 158, 95 N. W. 908, and 93 Minn. 118, 100 N. W. 669, the court held that the defendant was liable for the negligent acts of a servant of the board of park commissioners in stretching a rope across a boulevard, whereby a bicycle rider, in attempting to avoid the same, collided with a team and was injured.

In Mayor & City Council of Baltimore v. O'Donnell, 53 Md. 110, 36 Am. Rep. 395, the syllabus reads as follows:

"A city employed an individual upon a contract to repair one of its streets. The contractor's servants attached a rope across the street and hung a lighted lantern upon the rope at night. The lantern was broken and extinguished by boys. The plaintiff, in driving a hack at night, came in contact with the rope and was injured. The city authorities and the contractor had no notice of the rope. Held, that the plaintiff could recover against the city."

We make the following extract from the text of the opinion:

"The court properly instructed the jury * * * that it was the duty of the defendant to take proper precaution, by proper guards, signals, lights, or other warnings, to warn persons of the impassable condition of the street, so as to prevent injuries to persons passing along said street, and if the jury further find that the defendant, and those employed by it in repairing and recurbing said street, did not use ordinary care in providing such precautions, and that the plaintiff, in consequence of such neglect to provide such precautions was thrown from his hack while driving with ordinary care along said street, then the plaintiff is entitled to recover."

The case of Wheeler v. City of Fort Dodge, 131 Iowa, 566, 108 N. W. 1057, 9 L. R. A. (N. S.) 146, contains a valuable citation of authorities on the subject-matter of obstructions in public streets, and the liability of municipalities for permitting their existence. In that case the defendant, on the occasion of a Fourth of July celebration, permitted the erection of a wire over a street for the purposes of a tight-rope performance. The exhibitor fell and injured the plaintiff, and the city was held liable in damages. The court, inter alia, said:

"The fact that the wire in most of its course passed through the air above the heads of the people using the walks and carriage way below does not remove its character as an obstruction of the street. The public right goes to the full width of the street and extends indefinitely upward and downward so far at least as to prohibit encroachment upon said limits by any person by any means by which the enjoyment of said public right is or may be in any manner hindered or obstructed or made inconvenient or dangerous."

Counsel for the defendant cites the case of Simon v. City of Atlanta, 67 Ga. 618, 44 Am. Rep. 739, as holding that, as stated in the syllabus, to temporarily obstruct passage by stretching ropes across a street during a parade or practice of the fire department does not furnish any ground for damages against a city. The syllabus is too broad. The facts were that a rope was stretched sufficiently

*above* the pavement as not to interfere with the free use of the street, and that from some cause, not traceable to the municipal authorities or the fire department, the rope fell upon, and injured the plaintiff.

In the case at bar, the municipal authorities obstructed the street by wire ropes stretched a few feet above the pavement. The placing of these ropes commenced on the fifth day before the date of the first Mardi Gras procession, and no precautions were taken to warn the public of the existence of these obstructions. These ropes were so small that it was very difficult for ordinary persons to perceive them at night, even in a well-lighted thoroughfare. Martin evidently did not see them, and, assuming that the street was safe, rushed to his death. Having created this obstruction in a public street, it was the plain duty of the municipal authorities to have warned the traveling public of its existence by lights or other proper signals.

As to the quantum of damages, we see no good reason to disturb the verdict.

It is therefore ordered that the judgment below be affirmed, and that defendant and appellant pay costs of appeal.