McBRIDE, Judge.
In this action the wife and daughter-in-law of Earl F. Hill, Sr., recovered judgment for damages for personal injuries each allegedly sustained when Hill’s automobile, which he was driving and in which they were passengers (together with Hill’s son), came into contact with a fallen wire which was stretched across Highway No. 22 in Plaquemines Parish on which the vehicle *136 was traveling. The occurrence took place about 2:45 a. m., on Christmas morning of 1961 when the group was traveling from Port Sulphur, Plaquemines Parish, to Gret-na Jefferson Parish. Plaintiffs allege Hill’s negligence was responsible for the accident; they directed their suit against his liability insurer which has appealed from the judgment.
The wire had not been across the road the previous evening when Hill had driven to Port Sulphur over the same highway. No one knows the cause of the dangerous position of the wire and the supposition is that another motorist had struck and knocked down the pole to which it was attached or that the pole was left in, a leaning position after being struck. We do not know the color of the wire, its diameter or composition, but it seems to be conceded that it was the usual kind of wire rope used as a guy to steady utility poles and we do not think counsel will dispute an assumption that the wire was about three-fourths of an inch in diameter. The wire entered the highway from the right and was about eighteen inches or two feet above the surface of the lane in which the automobile was traveling. When it struck the wire the car lurched, and Hill states he accelerated his speed because sparks began to fly about him as the guy wire came into contact with wires carrying electrical energy. The guy wire somehow became lodged between the chassis and the front wheels, and as a result the brakes on the car went out of commission and the car, before coming to a stop, coasted under its momentum down the highway for about one-half mile.
Plaintiffs charge Hill with several counts of negligence; they allege that the night was foggy which fact necessitated great care on the part of drivers to avoid accidents and that Hill should have proceeded at an extremely slow rate of speed; that he failed to observe the wire in time to avoid striking it; that the rate of speed at which he was driving made it impossible for Hill to avoid striking the wire after he saw it. Of course, the defendant denies any negligence on Hill’s part.
The weather at the time was hazy with intermittent patches of ground fog. We see nothing in the evidence, however, which would indicate that at the locus in quo the fog was of such density as to interfere with the vision of a motorist. It appears to be otherwise.
Hill’s sobriety was also brought into question and the plaintiffs suggest indirectly that he was either intoxicated or somnolent. The record does not show that Hill had more than four drinks during an eight-hour period (from 6 p. m. to 2:30 a. m.), and no one testified that he was intoxicated or was incompetent to drive the car. The evidence shows that he had only five hours’ sleep the previous night, but there is no evidence from which it could be concluded that Hill was not alert or did not possess all of his faculties at the time of the accident; moreover Hill, himself, who made an over-all endeavor to testify in a manner favorable to plaintiffs who were related to him and who lived with him in the same house, admitted he was not affected by the long hours of wakefulness and that he was “in condition to drive the automobile home.”
Hill’s speed came in for considerable discussion and the plaintiffs argued that Hill was going 60 miles per hour in a 50 mile zone. Under statutory provisions the general speed limit for the open highway is 60 miles an hour (LSA-R.S. 32:61), but plaintiffs are claiming that on the outskirts of Port Sulphur there is a 50-mile zone and that the accident happened therein. Mrs. Hill testified to the existence of a 50 mile per hour sign which they had passed, and she said it was on the right-hand side of the highway going towards Port Sulphur. Whether the accident took place within a 50 mile zone we do not know, and there is no showing that any limitation other than 60 miles per hour prevailed. The witnesses agreed that Hill was going 30-35 miles per hour through Port Sulphur and gradually increased his speed as he left the town behind him. Mrs. Hill said she asked her husband to slow down and that he did so. Hill states his speed was 50-^60 miles per *137 hour; Mrs. Hill estimated it to be about 60 miles per hour. Hill, Jr., testified to a speed of 60, 65, or 70 miles per hour. We might comment here that Hill, Sr., gave two written and signed statements to his insurer, in both of which he claimed he was traveling at but 35 miles per hour and that no one in the automobile had made any complaint about the speed he maintained. Also in his statements he stated that he had consumed two weak drinks, but at the trial he changed his story and said he had had four drinks.
But be that as it may, we do not think that the rate of speed at which Hill was driving played any part in the accident.
Hill said that after passing through Port Sulphur “the next thing I know, I seen this cable across the road and I hit it, I imagine. It just happened all of a sudden. I was right on top of it and I hit and it caught my car on the right front side, from the middle to the right, and jerked me off the road.”
No one in the automobile, including Hill, Sr., saw the wire until the car was about 40 feet removed from it, and the feature of the testimony which impresses us most is that everyone saw the “thing” at the same moment. The three passengers claimed to have been looking ahead attentively and alertly, and if this be true, why, we ask, should Hill, Sr., be held guilty of negligence for not having seen the object sooner than any of his passengers. The simple reason why none of the persons in the car saw the wire until the car was practically upon it is that it was such an object which was not easily discernible in the nighttime even under the most ideal conditions. The operator of an automobile under the circumstances existing in this case is not to be charged with running into an object of such unusual nature. Hill, Sr., had no reason to anticipate he would encounter such an obstruction overhanging the highway and his not having observed it sooner must be said to be excusable.
Cases such as this appear in our jurisprudence. In Nessen v. City of New Orleans, 134 La. 455, 64 So. 286, 51 L.R.A.,N.S., 324, the Court held a pedestrian not guilty of contributory negligence in running into wire which was strung along the edge of the. neutral ground on Canal Street and along the edges of the sidewalk, all preparatory to keeping back crowds during the Carnival parades. The accident happened at night. The galvanized wire rope was %sths of an inch in diameter and of a grayish color and placed about 41 inches above the sidewalk. It was contended the deceased was an old resident of New Orleans and should have anticipated meeting with the temporary obstruction. The Court said:
“ * * * The placing of these ropes commenced on the fifth day before the date of the first Mardi Gras procession, and no precautions were taken to warn the public of the existence of these obstructions. These ropes were so small that it was very difficult for ordinary persons to perceive them at night, even in a well-lighted thoroughfare. Martin evidently did not see them, and, assuming that the street was safe, rushed to. his death. * * * ”
In Moncrief v. Ober, 3 La.App. 660 which was subsequently cited with approval by the Supreme Court), it was held that a small cable illegally stretched above the surface of a public road is such an unusual obstruction that the failure of one driving an automobile to notice it would not indicate careless or reckless driving.
 The general rule governing such cases as the instant one is succinctly set forth in Vowell v. Manufacturers Casualty Insurance Company, 229 La. 798, 86 So.2d 909, wherein the Supreme Court said:
“Our rule that a motorist traveling on the public highways after dark or during a rainstorm, fog, or other abnormal condition, which prevents him seeing ahead, except imperfectly, and *138 for a short time and distance, must guard against striking objects in the road with which he may be suddenly confronted, constitutes an exception to the general rule that a motorist may assume that the road is safe for travel even at night. But that exception to the general rule is itself subject to the exception that a motorist traveling by might is not charged with the duty of .guarding against striking an unex-pected or unusual obstruction, which he 'had no reason to anticipate he would •encounter on the highway. Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A. 1917F, 253; Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1.”
After stating the above to be the rule, the Court, in Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1, continued by saying:
“ * * * As stated by Blashfield, in the last paragraph on page 457 of volume 5: 'An automobile driver is not required to anticipate an unusual obstruction on the public highway.’ A case illustrative of this rule is Moncrief v. Ober, 3 La.App. 660, decided by the Court of Appeal, Second Circuit. In that case it was held that a small cable illegally stretched above the surface of a public road is such an unusual obstruction that the failure of a motorist to observe it did not indicate negligence on his part.
“The court, in the course of its opinion, stated the rule of law correctly as follows, viz.: 'As to the failure of Mrs. Moncrief to have seen the cable, the drivers of automobiles on the highways are charged with the observance •of ordinary care as to objects which may be lawfully upon the way, and will be held to have seen such objects (with the resulting consequence) where the •evidence shows their failure to have noted the situation is attributable to lack of ordinary care in observing the way; but as'to obstructions unlawfully upon the roadway, their failure to have noted the situation will not be attributed to want of ordinary care in observing the way, unless the evidence shows the obstruction to have been such that the failure to have noted the situation shows the driver to have been carelessly or recklessly driving upon the highway.’ ”
Our predecessors in Woodall v. Southern Scrap Material Co., La.App., 40 So.2d 495 (writs refused), said:
“It is also settled that there may be exceptional circumstances which will serve to exculpate a driver who, because of those exceptional circumstances and in spite of due diligence, fails to discover some obstruction or some other vehicle on the road ahead of him. Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A.1917F, 253; Moncrief v. Ober, 3 La.App. 660; Kirk v. United Gas Public Service, 185 La. 580, 170 So. 1; Hemel v. United States Fidelity & Guaranty Co., La.App., 31 So.2d 38.”
There are many other authorities from this and other jurisdictions to the same effect which .we-deem unnecessary to cite here.
For the above reasons, the judgment appealed from insofar as it runs in favor of Mrs. Earline LeNormand, wife of Earl F. Hill, and Mrs. Linda Hindman, wife of Earl Hill, Jr., and also insofar as it casts the defendant for all costs be and the same is hereby reversed, and the demands of the above-named plaintiffs are dismissed; in all other respects the judgment appealed from is affirmed.
The three plaintiffs are to 'be solidarily liable for costs in the lower court; costs of appeal are to be borne by the two above-named plaintiffs.
Reversed in part; affirmed in part.