169 So.2d 918 (1964)
Elda THIBODEAUX, Individually and as Tutrix of the Minor, Alzenia Thibodeaux and Herman Gallien, Plaintiffs and Appellants,
v.
JACK'S COOKIE CORPORATION and Liberty Mutual Insurance Company, Defendants and Appellees.
No. 1301.
Court of Appeal of Louisiana, Third Circuit.
December 1, 1964.
Rehearings Denied January 5, 1965.
Writ Refused February 23, 1965.
*920 Mouser & Mouser, by Edward M. Mouser, Kinder, and Vinson M. Mouser, Columbia, for plaintiffs-appellants.
Hall, Raggio & Farrar, by R. W. Farrar, Jr., Lake Charles, for defendants-appellees.
Before FRUGÉ, SAVOY and HOOD, JJ.
HOOD, Judge.
This action was instituted by Elda Thibodeaux, individually and in behalf of her minor daughter, Alzenia Thibodeaux, and by Herman Gallien, to recover damages alleged to have been sustained by plaintiffs as a result of a motor vehicle collision. One of the vehicles involved in the collision was an automobile owned and being operated by Elda Thibodeaux, and the other was a large truck-trailer combination, owned by Jack's Cookie Corporation and being driven by its employee, Oscar L. McKlemurry. The suit was instituted against Jack's Cookie Corporation and its liability insurer, Liberty Mutual Insurance Company.
After trial on the merits, judgment was rendered in favor of defendants, rejecting plaintiffs' demands. Plaintiffs have appealed.
The accident occurred about 4:30 a. m. on March 5, 1963, on U. S. Highway 190, in Allen Parish, Louisiana. The highway at that point runs east and west, and it is a hard-surfaced, level, straight, heavily-travelled thoroughfare, with eleven-foot shoulders on each side of the slab.
The evidence shows that at about 1:00 a. m. on the day the accident occurred, Elda Thibodeaux left Opelousas, Louisiana, in her 1951 model Pontiac automobile to drive in a westerly direction to her home in Beaumont, Texas. The only other occupants of the car were her 21-year-old nephew, Herman Gallien, and her 11-year-old daughter, Alzenia Thibodeaux. It was raining when they left Opelousas and they encountered rain all along the trip. They stopped in or near Basile, Louisiana, to get something to eat, and when they attempted to leave the restaurant they found that they were unable to start the motor of the car. Their automobile was then pushed across the street to a service station, and after the attendant wiped of the wires around the motor they succeeded in starting the car and they continued on their trip to Beaumont.
After leaving the service station, the motor ran well enough for them to travel at a speed of about 40 to 45 m. p. h. for a number of miles, but when they reached a point on U. S. Highway 190, near Reeves, Louisiana, the motor began missing to such an extent that the speed of the car was reduced to between 10 and 15 m. p. h. Finally, the motor stopped completely and plaintiffs' car came to rest on the highway, facing in a westerly direction, with the two right wheels of the automobile a few inches north of the north edge of the hard-surfaced portion of the highway, and with the remainder of the car on the pavement. In that position, the parked automobile blocked a substantial portion of the westbound lane of traffic on that highway.
*921 After the car stopped, Elda Thibodeaux attempted to start the motor for about five minutes, but without success. She then got out of the automobile for the purpose of flagging down a passing motorist for help. After she had been out of the car for a few minutes, Gallien tried for about three minutes to start it, also without success. After the car had been parked on the highway in that position for approximately fifteen minutes, defendant's large cab-over-engine truck-trailer combination, being driven by McKlemurry, approached from the east, travelling in a westerly direction on the same highway, and it collided with the rear-end of the automobile. As a result of the collision, Elda Thibodeaux and the two occupants of the car were injured.
No effort was made by Elda Thibodeaux or by either of the other two occupants of the car to push or to move the Thibodeaux automobile off the paved portion of the highway after it stopped there. Gallien and plaintiff's daughter did not get out of the car at all before the accident occurred, and Elda Thibodeaux stated that she did not try to push it because she did not think she could. Gallien wanted to get out of the car and he suggested that he do so, but Elda Thibodeaux told him to stay in the automobile because "they helps a woman quicker."
The driver of the truck testified that shortly before he reached the stalled car he was partially blinded by the lights of a vehicle approaching from the west, that he dimmed his lights as he met this vehicle, that immediately after he met and passed it he turned his lights on high beam, and that he thereupon observed, for the first time, that plaintiffs' automobile was parked in his lane of traffic about 66 feet ahead of him. He testified that he did not apply his brakes with full force for fear that the truck would jackknife, and that he was unable to avoid a collision with the car. He states that he was driving the truck at a speed of about 46 m. p. h. immediately before and at the time of the accident, and that he did not reduce his speed after he became partially blinded by the lights of the oncoming vehicle and the water which fell or splashed on his windshield.
One of the important factual issues presented is whether the lights on the Thibodeaux automobile were burning immediately before and at the time of the accident. Plaintiffs contend that they were burning brightly, while the driver of the truck states that he saw no lights on the car. The trial judge concluded that all of the lights on the automobile were burning, including the two taillights, and that the headlights were on bright as distinguished from dim. We think the evidence clearly supports that finding, and we also conclude that the headlights and both taillights on the Thibodeaux vehicle were burning immediately prior to and at the time of the collision.
Another factual issue presented is whether Elda Thibodeaux was in front of or to the rear of her automobile at the time of the collision. She testified that just prior to and at that time she was from 15 to 18 feet behind, or east of, her automobile, and that she was standing on the north shoulder of the road waving a white sweater to attract the attention of approaching motorists with the hope that one would stop and give plaintiffs some assistance. The driver of the truck testified that he saw no one behind, or east of, the automobile as he approached it, but that he did see a woman in front of the automobile just prior to the collision, and that this woman was hurled about 20 feet through the air to his left, or in a southerly direction, when the vehicles collided.
The evidence shows that the force of the collision caused Elda Thibodeaux to be knocked or thrown to the south side of the highway, her body coming to rest after the accident partially on the south shoulder and partially on the hard-surfaced eastbound or south lane of traffic. The direction in which she was knocked indicates *922 that she could not have been on the north shoulder at the time the accident occurred. Also, the left front headlight of the Thibodeaux car was broken and the nature of some of the lacerations which Elda Thibodeaux sustained indicates that she was struck by the left front portion of the automobile, rather than by the truck.
The trial judge concluded that Elda Thibodeaux was in front of her car at the time the accident occurred, and that she was not behind it and partially on the north shoulder of the highway, as she contends. We think the evidence supports that finding.
In Lewis v. Quebedeaux, La.App. 3 Cir., 134 So.2d 93, we said:
"The law is well settled to the effect that a motorist is held to have seen an object which, by the use of ordinary care and prudence, he should have seen in time to avoid running into it, and that the driver of an automobile is guilty of negligence in driving at a rate of speed greater than that in which he could stop within the range of his vision. * * * (citations omitted.)
"The general rule which has been established by the jurisprudence of this state is that when visibility is materially impaired because of such things as bright lights, smoke, mist, dust, fog or rain, a motorist is held to a duty of operating his vehicle with an unusually high degree of care. He should reduce his rate of speed to such an extent and keep his car under such control as to reduce to a minimum the possibility of accident from collision. As an extreme measure of safety it is his duty, when visibility ahead is not possible or is greatly obscured, to stop his car and remain at a standstill until conditions warrant going forward. He does not have the right to assume that his course of travel is free from danger or obstruction in the absence of his ability to see clearly ahead, and if he continues to travel as if he knew there was perfect clearance ahead, he does so at his own risk and peril. * * * (citations omitted.)
"The general rule hereinabove stated, however, is not inflexible. Exceptions to that rule have been made in a number of cases where, because of the unusual and extraordinary circumstances which were found to exist in those particular cases, the driver of the moving vehicle was held to be free from actionable negligence in colliding with a stationary object on the road ahead of him."
The general rule hereinabove stated, or the recognized exception to that rule, have been applied repeatedly by our appellate courts in appropriate cases. See authorities cited in Lewis v. Quebedeaux, supra; and also Carriere v. Aetna Casualty Co., et al., La.App. 4 Cir., 146 So.2d 451; Soprano v. State Farm Mutual Automobile Ins. Co., La.App. 3 Cir., 155 So.2d 287; Standard Casualty Co. v. Fidelity & Casualty Co. of N. Y., La.App. 1 Cir., 162 So.2d 26.
Defendants contend that in the instant suit the general rule is not applicable and that the driver of the truck should be held to be free from negligence, because of the unusual and extraordinary circumstances which exist here. In support of that argument, they rely on the cases of Vowell v. Manufacturer's Cas. Ins. Co., 229 La. 798, 86 So.2d 909; Graham v. Hartford Accident & Indemnity Co., La.App. 2 Cir., 159 So.2d 333; Davis v. Fitzpatrick, La. App. 1 Cir., 150 So.2d 322; Suire v. Winters, 233 La. 585, 97 So.2d 404; Fontenot v. LaFleur, La.App. 3 Cir., 124 So.2d 607; Mose v. Insurance Co. of State of Penn., La.App. 3 Cir., 134 So.2d 312; Hill v. Hardware Mutual Ins. Co., 163 So.2d 135, La. App. 4 Cir., and Brunson v. Royal Indemnity Co., La.App. 1 Cir., 166 So.2d 656.
In the cases cited by defendants, it was held that the general rule hereinabove stated *923 was not applicable because of the unusual circumstances which existed in each such case. The facts in each of those cases, however, differ materially from the facts presented in the instant suit. Most of them involved nighttime collisions with pedestrians or with unlighted, dark colored objects or vehicles on the highway, the Fontenot and Brunson cases being the only ones involving stalled vehicles which were equipped with burning lights. In the Fontenot case, however, one taillight on the stalled car was burning, but the reflector on that light had been knocked out, and one of the former occupants of the car was standing directly behind that light, thus preventing the approaching motorists from seeing it. In the Brunson case, the stationary vehicle was a truck which was parked in a position almost perpendicular to the highway, with the front bumper of the truck extending to about the center line of the highway. Although it was found that the headlights were "burning very dimly," none of the lights were shining in the direction of the approaching motorist, and it is understandable that the latter was unable to see the truck parked in that position until he reached a point very close to it. Because of the substantial difference in facts, we find that none of the cases cited by defendant are applicable here.
In the instant suit, although the top of the Thibodeaux car was a dark color, the entire body of that automobile was painted a very light color, almost white. The two taillights and the headlights of the automobile were burning immediately before and at the time of the accident. It seems to us that the bright headlights of the car, although facing in a westerly direction, should have had the effect of silhouetting the car to some extent, and thus making it easier for the driver of defendant's truck to see it as he approached from the rear. In spite of these lights, however, McKlemurry says he could not see the car until he was within 66 feet of it, and yet he did not reduce the speed of his truck. The only reasons he assigns for failing to observe the stalled automobile sooner was the fact that there was a drizzling rain and that he was partially blinded by the lights of a vehicle which he met and passed just before the collision occurred.
In our opinion, there were no unusual or extraordinary circumstances present in the instant suit sufficient to cause this case to fall under the exception to the above stated general rule. We hold that the general rule applies, and that the driver of the truck was under a duty to reduce the speed of his truck and to exercise reasonable diligence in an attempt to bring his vehicle under control when he became partially blinded by the weather conditions and the headlights of an approaching vehicle. We conclude that the driver of the defendant's truck was negligent in failing to reduce the speed of his truck and to maintain such control over it that he would be able to stop within the range of his vision when he became partially blinded by the approaching headlights. His negligence in these particulars, we think, was a proximate cause of the accident.
Defendants specially plead and contend, however, that Elda Thibodeaux, individually, and Herman Gallien are barred from recovery because of their own contributory negligence. They contend that the former was negligent in stopping her vehicle on the main-travelled part of the highway when she could have stopped on the shoulder, in failing to remove it from the travelled portion of the highway as soon as possible, and in failing to take the necessary steps to protect approaching traffic. They contend that Gallien was negligent in failing to warn oncoming traffic of the hazard, and in remaining in the stopped vehicle when he knew, or should have known, that it constituted a hazard and that there was imminent danger of injury to the occupants of such vehicle.
Under our law, a driver is required to remove his disabled vehicle from the maintravelled portion of a highway as soon as possible, and until the disabled vehicle is *924 removed it is the responsibility of the driver to protect traffic. LSA-R.S. 32:141; Fontenot v. LaFleur, La.App. 3 Cir., 124 So.2d 607 (cert. denied); Lewis v. Quebedeaux, supra; Bertrand v. Trunkline Gas Co., La.App. 3 Cir., 149 So.2d 152; and Moses v. Mosley, La.App. 3 Cir., 146 So.2d 263.
In the instant suit, Elda Thibodeaux made no effort to push her car off the hardsurfaced portion of the highway after it stalled, because she states that she did not feel that she or her nephew were able to do so. Her nephew, Gallien, was 21 years of age, he weighed between 165 and 175 lbs. and was employed as a longshoreman at the time of the accident. He wanted to get out of the automobile and to assist, and he suggested to the owner and driver of the car that he do so, but Elda Thibodeaux told him to stay inside the car while she attempted to flag down a motorist for assistance. The car remained in its position, substantially blocking the westbound lane of traffic, for a period of about fifteen minutes before the accident occurred.
The trial judge concluded that Elda Thibodeaux was negligent "in failing and refusing to move the 1951 Pontiac onto the shoulder of the road, and in failing to properly warn westbound traffic of their precarious position." We agree with that conclusion, and accordingly we find, as did the trial judge, that Elda Thibodeaux is barred from recovery by her own contributory negligence.
We also conclude that Gallien was negligent in remaining in the parked vehicle when he knew, or should have known, that it constituted a hazard and that there was grave danger of injury to the occupants of such vehicle. Although he was instructed by his aunt to remain in the car, we interpret those instructions to be in the nature of a suggested plan for obtaining assistance rather than a command, and we do not think that Gallien felt that he was under any legal or moral duty to remain in that position of danger. In our opinion, Gallien's negligence was a proximate cause of the accident, and bars him from recovery.
Elda Thibodeaux and Gallien contend, alternatively, that they are entitled to recover under the doctrine of last clear chance. They argue that the driver of the truck could have avoided the accident by exercising reasonable care after he saw, or should have seen, the stalled automobile.
McKlemurry testified that he was unable to see the lighted, parked car until he reached a point about 66 feet from it. There is nothing in the evidence which tends to disprove that statement, and we are unable to hold that by the exercise of reasonable diligence he should or could have seen the car sooner under the circumstances which existed at that time. We have already held that he was negligent in failing to reduce his speed and to maintain better control over his truck under those circumstances. Considering his limited range of vision, however, the speed at which the truck was being driven, the weight of the truck and the dampness of the highway, we conclude that the truck driver could not have avoided the accident even though he had observed the stalled car as soon as he should have done so under the circumstances. Elda Thibodeaux and Gallien, therefore, are not entitled to recover under the doctrine of last clear chance.
Defendants do not contend that plaintiff's 11-year-old daughter was chargeable with contributory negligence, and the evidence clearly shows that there was no negligence on her part. Elda Thibodeaux, therefore, as tutrix for her minor daughter, is entitled to recover from defendants for the injuries sustained by the child.
The remaining question relates to the amount of the award which should be made to Elda Thibodeaux for and in behalf of her minor daughter. The evidence shows that, as a result of the accident, this child *925 suffered a fracture of the left humerous, along with general contusions and brush burns of the body. Her arm was placed in a hanging cast and she was confined to a hospital for sixteen days. The cast was removed on April 19, 1963, and exercises were prescribed for her. In May, 1963, she was discharged as having a normal functioning arm with no indication of further disability. She missed about one month of school as a result of the accident. In our opinion, an award of $2,000.00 for the injury and for pain and suffering endured by Alzenia Thibodeaux would be fair and adequate.
Elda Thibodeaux, as administratrix of the estate of her minor child, also demands judgment for the medical expenses which she incurred in the treatment of the child's injuries. Since the mother, however, has been found to be contributorily negligent, she cannot recover the medical expenses which she is obliged to furnish. Monge v. New Orleans Ry. & Light Co., 145 La. 435, 82 So. 397; Bergeron v. Houston-American Ins. Co., La.App. 1 Cir., 98 So.2d 723.
For the reasons herein assigned, therefore, the judgment appealed from is affirmed insofar as it rejects the demands of Elda Thibodeaux, individually, and of Herman Gallien, and dismisses the suit as to those plaintiffs. The judgment appealed from is reversed, however, insofar as it rejects the demands of Elda Thibodeaux, as tutrix of her minor child, and judgment is hereby rendered in favor of the said Elda Thibodeaux, as tutrix of the minor, Alzenia Thibodeaux, and against Jack's Cookie Corporation and Liberty Mutual Insurance Company, in solido, for the full sum of $2,000.00, with legal interest thereon from date of judicial demand until paid, and for all costs of this suit. Except as herein specifically reversed or amended, the judgment appealed from is affirmed. Two-thirds of the costs of this appeal are assessed to appellants, Elda Thibodeaux, individually, and Herman Gallien, and the remaining one-third of said costs are assessed to appellees.
Affirmed in part; reversed in part; and rendered.
On Application for Rehearing.
En Banc. Rehearing denied.