LABORDE, Judge.
Plaintiff, Sammie Kitchen, brought this action for personal injuries allegedly sustained in an automobile accident against Malvón Construction Company and the State of Louisiana, Through the Department of Transportation and Development. The Department of Transportation and Development was dismissed from suit when the trial court sustained its exception of no right of action. The State of Louisiana, through the Department of Public Safety, the employer of Sammie Kitchen, intervened for reimbursement of worker’s compensation benefits. After trial on the merits, the trial court found no liability on behalf of defendant; however, the court proceeded to evaluate plaintiff’s damages and found that he did not prove by a preponderance of the evidence that the accident caused him any injury. Accordingly, plaintiff and intervenor’s suits were dismissed. Plaintiff appeals specifying five (5) errors of the trial court.[1] Intervenor, *801 the Department of Public Safety, appeals and adopts the position of Sammie Kitchen. We affirm.
FACTS
On the evening of November 13, 1983, plaintiff, a Louisiana State Police Trooper, was dispatched to Gorum in the Parish of Natchitoches. Plaintiff was accompanied in his patrol car by Robert Jackson, a Civil Defense Deputy. Plaintiff turned off of La. Highway 1 onto La. Highway 119 and quickly approached the construction zone for the new Interstate 49 project. The construction zone was marked with warning signs, blinking lights, and advisory speed signs of forty-five (45 m.p.h.) miles per hour.
A dirt haul road forty (40) feet wide and two (2) feet high had been constructed over La. Highway 119. This temporary road was laid across the highway to protect the blacktop surface from the heavy equipment being used on the 1-49 project. The haul road was shown to have been maintained by Malvón and to be in good condition. The haul road was indicated by a “Bump” sign. Several fifty-five (55) gallon barrels painted orange with illuminant reflective tape outlined the intersection. Numerous yellow flashing warning lights highlighted the temporary road. Other warnings included a “Construction Zone” sign, “Construction Ahead” sign, “Construction 500 feet” sign and the aforementioned “45 Speed Limit” sign.
Plaintiff maintains that he was unfamiliar with the construction site and that he did not see the warning signs or signals before hitting the haul road. At trial, plaintiff estimated his speed at between fifty-five (55) and sixty-five (65) miles per hour. The police car became airborne upon crossing the haul road. The car landed upright with a thud breaking the radio mounting bracket, bucking the car floor board and splitting plaintiffs trousers from the crotch to the knees. Plaintiff asserts that his pre-existing back injury was exacerbated by the jolt and claims permanent disability.
FINDINGS OF THE TRIAL COURT
The trial court provided excellent reasons for judgment, a portion of which we reproduce below:
“On the date of the accident, the plaintiff was a working state trooper. It was dark and plaintiff was driving a state police automobile which was equipped with revolving red lights, a siren, radar and police radios. Riding as a passenger was Natchitoches Civil Defense Officer Robert Jackson, Jr.
Trooper Kitchen heard a radio call at 12:30 A.M. from the Natchitoches Parish Sheriffs office advising that a domestic quarrel involving possible use of guns had been reported at Gorum, in South Natchitoches Parish. Being the closest law enforcement officer to the reported quarrel, he radioed that he was responding to the disturbance and was in route to Gorum.
The plaintiff turned his red lights on; arriving at the 119 intersection, he turned off of Highway 1 onto 119, heading west. He attained sufficient speed so that when his vehicle crossed the haul road it became airborne, a la ‘Dukes of Hazard,' and landed upright on 119. It is from this incident that plaintiff claims to be permanently disabled.
To give a better perspective of the condition of Highway 119 on November 13, 1983, the following findings are made. The plaintiff and his passenger; and Christopher Paige, the driver of a Natchitoches Parish Hospital ambulance called to the scene, all testified that there were some signs and flashing lights as they approached the haul road, but they didn’t remember with any certainty exactly what was where.
The Court accepts the testimony of John Fraser, Project Engineer for Mal-vón, who was in charge of this particular part of 1-49. The Court also accepts the *802 testimony of Edgar Jordan, a 25 year employee of the Louisiana Department of Transportation and Development and Chief Inspector on this job at the time of the wreck. Their testimony was that the haul road had been constructed on March 17, 1983, and that several signs and lights were in place from that date to the time of the accident. At the Highway 1-Highway 119 intersection, facing traffic traveling west on 119, was a sign which read “Highway Construction Ahead”; then a “Construction 500 Feet” sign; then a “45 Speed Limit” sign; then a “Bump” sign; then six 55 gallon barrels painted with orange paint and illumi-nescent reflective tape — one barrel on each corner where the haul road crossed 119 and one barrel on the north and south ends of the crown on the 119 haul road. There were also numerous yellow flashing warning lights, the exact number being unknown.
From Highway 1 to the haul road there was not enough distance to put “Construction 1,000 Feet” and “Construction 1,500 Feet” signs. The exact distance of the railroad tracks from Highway 1 and from the haul road was not presented in court, but it is somewhere between the two.
The plaintiff testified that on the night of November 13, 1983, he drove his vehicle at 55 mph across the haul road. He told Dr. Joseph A. Thomas, his treating physician, on November 18,1983, that his car flew 8 to 10 feet high off of the ground. He further testified that when the vehicle came down that the plaintiffs head hit and broke the outside red revolving police lights mounted to the top of the vehicle. He also broke the front seat springs, and a lot of the vehicle equipment on the bottom of the vehicle was torn off. A radar unit mounted on the dashboard broke off and fell into the passenger’s lap. On different occasions, plaintiff and his passenger gave inconsistent versions of the speed of the police car.
The Court accepts the combined testimony of witnesses John Fraser; Edgar Jordan; Trooper Earl Townsend; Trooper Donald Cotton; Mr. Charles R. Churchman; former State Police Troop E Commander Robert W. Garifo; Natchi-toches Parish Deputy Bob Dalme; Commander of Criminal Investigation for the Louisiana State Police, Capt. Jimmy L. Price; Trooper James Ryder; and, Retired Troop E Executive Officer, Lt. Wor-rell, and finds that Mr. Kitchen, on November 13, 1983, on Highway 119 was guilty of failing to have his vehicle under proper control, exceeding the safe driving speed, failing to observe and to heed the warning signs and lights, and that his speed was unsafe and unreasonable; all of which constitutes gross negligence, which was the sole and proximate cause of the accident.
The Court further finds Malvón to be entirely free from fault and finds the signs and lights sufficient to warn the motoring public of the existence of the haul road across 119 and of the 45 mph speed limit.
With reference to plaintiff's alleged injuries, the Court finds that plaintiff’s long history of previous injuries, starting in .1970, and which includes numerous claims, lawsuits; a $66.00 monthly disability check from his 1970 U.S. Army service; a disability retirement from the Louisiana State Police; and his rambling and disconnected testimony in court, all lead this Court to conclude that the plaintiff has failed to prove with a preponderance of the evidence that the incident of November 13, 1983, caused him any injuries. On this point, the Court finds the plaintiff's testimony to be not believable and not trustworthy.
For these reasons, the plaintiff’s suit is dismissed at his costs, as to all defendants.”
STANDARD OF REVIEW
At the outset, we note that this court is bound by the statement articulated in Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973):
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a rea *803 sonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.”
Our review of the record shows that the trial court’s findings are not only reasonable, but eminently correct.
LIABILITY OF MALVON CONSTRUCTION COMPANY
The standard of law to be applied in a case of this type was articulated in Pickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La.1975), wherein the court said at 432-433:
“There is no fixed rule for determining what is a dangerous defect in a public way; the facts and surrounding circumstances of each particular case control. The test usually applied, however, requires an answer to the question: Was the public way maintained in a reasonably safe condition for persons exercising ordinary care and prudence? Arata v. Orleans Capitol Stores, [219 La. 1045, 55 So.2d 239 (1951) ] supra; cf. Nessen v. City of New Orleans, 134 La. 455, 64 So. 286 (1914); Allen v. Town of Minden, 127 La. 403, 53 So. 666 (1910).”
The Highway Department, and in this case the contractor as well, is required to warn motorists of unusual or perilous hazards in the road. See Wall v. American Employers Insurance Company, 215 So.2d 913 (La.App. 1st Cir.1968), writ refused, 253 La. 325, 217 So.2d 415 (1969). We find that the warning devices used— several signs, flashing lights, and illuminant barrels — were adequate and sufficient to alert normally observant motorists to the dangers of the construction zone and, specifically, the “bump” created by the haul road. Richardson v. Continental Insurance Co., 468 So.2d 675 (La.App. 3d Cir.), writ denied, 474 So.2d 1304 (La.1985). Plaintiff was not excused by the nature of his work and should have seen that which a reasonably prudent observer should see. He was still under a duty to drive in due regard for his own safety in accordance with the surroundings and circumstances that were in existence. See Carpenter v. Hartford Accident and Indemnity Co., 333 So.2d 296 (La.App. 1st Cir.1976). The trial court was not manifestly erroneous in finding plaintiff’s gross negligence to be the sole cause of the accident in light of the adequate warnings of the construction zone and of the haul road.
For the above and foregoing reasons, the judgment of the trial court dismissing plaintiff, Sammie Kitchen, and intervenor, State of Louisiana, Through the Department of Public Safety, from suit is affirmed. Plaintiff and intervenor are to share equally the costs of this appeal.
AFFIRMED.

. Appellant specifies the following as errors of the trial court:
"1. The trial judge committed error of law and fact in not finding the dirt haul road constructed across a state highway measuring some 24 to 30 inches in height was a hazardous condition.
2. The trial judge committed error of law and fact in not finding defendant Malvón Construction Company at fault under either a negligence or strict liability theory of law for construction [sic] this dirt haul road and not posting adequate warnings to motorists using the state highway traversed by this haul road.
3. The trial judge committed error of law and fact in accepting the testimony of witnesses relative to the existence of warning signs on the day of plaintiffs car accident.
4.The trial court committed error of law and fact in not applying the doctrine of comparative negligence."
These four specifications are addressed under "Liability of Malvón Construction Company” infra. While referring to "comparative negligence” in specification number four, appellant discusses the application of “strict liability” in his brief. For reasons to follow, we find plaintiffs negligence to be the sole cause of the accident, thus eliminating the application of both "comparative negligence” and "strict liability." See Burge v. City of Hammond, 489 So.2d 1320 (La.App. 1st Cir.1986).
*801 "5. The trial court committed error of law and fact in not awarding plaintiff damages, medical expenses, and lost wages.”
Discussion of appellant’s final specification of error is pretermitted as we find no liability on behalf of Malvón Construction Company.