146 So.2d 263 (1962)
Arval M. MOSES et ux., Plaintiffs and Appellants,
v.
C. D. MOSLEY, Defendant and Appellee.
No. 631.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1962.
*264 William C. Pegues, III, DeRidder, for plaintiffs-appellants.
Hall & Coltharp, by L. H. Coltharp, Jr., DeRidder, for defendant-appellee.
Before TATE, SAVOY and HOOD, JJ.
HOOD, Judge.
This is a damage suit instituted by Arval M. Moses and his wife against C. D. Mosley, arising out of an automobile accident which occurred about 10:20 A.M. on January 28, 1961, in Beauregard Parish. Plaintiffs contend that the accident was caused by the negligence of defendant's minor son, who was driving defendant's car at the time of the accident. Defendant denies any negligence on the part of the driver of his car, and in the alternative he specially pleads contributory negligence on the part of Mrs. Moses, the driver of plaintiffs' automobile. After trial of the case, judgment was rendered by the trial court in favor of defendant, rejecting plaintiffs' demands, and plaintiffs have appealed from that judgment.
Although the trial judge did not assign written reasons for judgment, it is obvious that he concluded either that the driver of *265 defendant's car was free from negligence or that plaintiffs are barred from recovery because of contributory negligence.
The weather on the morning of the accident was very cold and inclement, with freezing rain and sleet, rendering driving conditions extremely difficult, and limiting visibility to about 200 feet. Mrs. Moses and her son had driven to Dry Creek earlier that morning to buy groceries, and at the time of the accident they were returning to their home, traveling in a westerly direction on a hard surfaced rural highway. The rain or sleet was freezing on the windshield of the car, so Mrs. Moses had stopped periodically to let her son get out and wipe off the windshield with a cloth.
Immediately before the accident occurred, Mrs. Moses had driven around a long curve in the highway when she decided to stop the car again to allow her son to clean the windshield. She thereupon stopped the car with its right wheels about one foot off the paved portion of the highway, and with the left side of her car occupying about 4½ or 5 feet of the north lane of the main traveled portion of it. By stopping in that position she left about 12 or 12½ feet remaining between the left side of her car and the south edge of the highway. The evidence shows that because of this curve and a high embankment on the south side of the highway, in the center of the curve, the driver of a vehicle approaching the parked automobile from its rear could not have seen it, even under ideal weather conditions, until he reached a point within 120 feet of the Moses car.
After Mrs. Moses had stopped her car in that position and her son had gotten out and had started to wipe the windshield, defendant's car approached from the east, being driven at a speed of about 40 miles per hour. The driver of defendant's car states that he first saw the Moses car when he was about 50 feet from it, and although he applied his brakes he was unable to avoid a collision. The front of his car struck the left rear of the Moses vehicle, and as a result of this collision, plaintiff's car was damaged and Mrs. Moses sustained personal injuries.
The only explanation offered by defendant's son as to why he did not see the Moses car until he reached a point within 50 feet of it was that ice was on the windshield of his car and it impaired his vision. He states that he applied his brakes immediately and did everything possible to bring his car to a stop after he saw the Moses car, but that he was unable to avoid colliding with it. He concedes that the accident may have been avoided if he had been driving a little slower.
We think the law is settled that when visibility is materially impaired because of smoke, fog, or other atmospheric conditions, including rain, sleet and ice forming on the windshield, a motorist is held to a duty of operating his vehicle with an unusually high degree of care. He should reduce his rate of speed to such an extent and keep his car under such control as to reduce to a minimum the possibility of accident from collision, and as an extreme measure of safety it is his duty, when visibility ahead is not possible or is greatly obscured, to stop his car and remain at a standstill until conditions warrant going forward. He does not have the right to assume that his course of travel is free from danger or obstruction in the absence of his ability to see clearly ahead, but if he continues to travel as if he knew there was perfect clearance ahead, he does so at his own risk and peril. See Ardoin v. Southern Farm Bureau Casualty Insurance Company, La.App. 3 Cir., 133 So.2d 129, and cases cited therein.
In the instant suit we are convinced that the driver of defendant's car was negligent in failing to maintain a proper lookout, in failing to keep his vehicle under proper control and in driving it at an excessive rate of speed under the circumstances presented here. His negligence in that respect was one of the proximate causes of the accident.
*266 The next important question presented is whether the driver of plaintiffs' automobile also was negligent, and, if so, whether her negligence was a proximate and contributing cause of the accident, barring plaintiffs from recovery.
At the point where the accident occurred there was a shoulder on the north side of the road about eight feet wide. Five feet of this shoulder were flat and level with the pavement, and the remaining three feet of its width sloped toward the ditch. The evidence establishes that Mrs. Moses could easily and safely have parked her car completely on the shoulder of the highway, and thus would not have obstructed any part of the main traveled portion of the road. She explains, however, that she was afraid to pull too far off the highway because the shoulders appeared to be "muddy and boggy," and she thought she had left enough room for another car to pass. When asked why she did not stop sooner, she replied:
"Well, I wanted to clear themake sure I was far enough around the curve, until I was on a straight stretch of highway, due to the fact that my windshield was frozen over and my visibility was so poor until I decided I would go ahead and stop and risk the chance." (Emphasis added.)
While the evidence shows that ice had formed on the windshield of plaintiffs' car, partially obstructing her vision and making it necessary for her to stop and clean the windshield, we are convinced that there was no sudden emergency which made it necessary for her to stop immediately at that particular place, and there was no reason why she could not have parked on the shoulder, leaving adequate clearance for other vehicles on the highway, or she could have gone a greater distance beyond the curve before stopping. She stated that shortly before she stopped it had been necessary for her son to put his head out the open window of the car to observe the road and to assist her in staying on it. They seem to have traveled some distance by using that procedure, however, and in fact had just negotiated a long curve in that way before deciding to stop. It seems to us that by using that same procedure the driver could have driven a few more feet off the highway. Certainly, after initially coming to a stop and observing the position of her car, Mrs. Moses should have then seen that it was obstructing a substantial portion of the pavement, and thereafter with her son's assistance she could have moved her car a few more feet to get it off the main traveled portion of the highway, or she could have proceeded a little greater distance beyond the curve before stopping.
LSA-R.S. 32:241 (A) and (B), relating to the parking of vehicles on highways, provide in part that:
"A. No person shall park any vehicle, attended or unattended, upon the main traveled portion of any highway, outside of a business or residence district, when it is practicable to park it off the main traveled portion of the highway. In no event shall any person park a vehicle, attended or unattended, upon a highway unless an unobstructed width of not less than fifteen feet upon the main traveled portion of the highway opposite such parked vehicle is left free for passage of other vehicles, nor unless a clear view of such vehicle exists from a distance of at least two hundred feet in each direction upon the highway. * *
"B. The provisions of this rule shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic."
Plaintiffs contend that this statute was not violated, because the Moses car was not "parked" on the highway. It is argued *267 that the car was merely brought to a temporary or momentary stoppage for a lawful purpose or because of necessity. To support this argument, plaintiffs rely on the cases of McGehee v. Stevens, La.App. 2 Cir., 15 So.2d 897 and Lacour v. Continental Southern Lines, Inc., La.App. 1 Cir., 124 So.2d 588. Both of these cases involved the stopping of a bus on the highway to receive or discharge passengers, and in both the following language was used:
"* * * neither does the word `park' in common usage embrace the temporary cessation of motion for the accomplishment of a particular lawful purpose, such as the discharging or receiving of passengers."
We have already pointed out that the stop made by Mrs. Moses in the instant suit was not forced by a sudden emergency, compelling her to bring her car to a stop at that particular point. In our opinion the bringing of her car to a stop on the main traveled portion of the highway to clean her windshield, when she was not compelled by an emergency to stop there, cannot be classified as a "temporary cessation of motion" for the accomplishment of a "lawful purpose," as those terms are used in the above cited cases. We conclude, therefore, that Mrs. Moses "parked" her vehicle on the main traveled portion of the highway, in violation of LSA-R.S. 32:241 (A).
Counsel for plaintiffs argues, however, that the manner in which Mrs. Moses parked was not a proximate cause of the accident. It is pointed out that a collision would have occurred even though the Moses car had been parked about three feet further on the shoulder, leaving exactly fifteen feet clearance on the highway for other traffic, as required by the above cited statute. It appears from the evidence that the point of impact was such that the extreme right side of defendant's car would have struck the extreme left rear corner of the Moses car if Mrs. Moses had left a clearance of exactly fifteen feet on the highway. That argument, of course, is based on the assumption that the driver of defendant's car would have reacted the same way and that his car would have traveled in exactly the same path under these changed circumstances. It would require some speculation to arrive at a conclusion that the accident would have occurred even if the provisions of LSA-R.S. 32:241 had not been violated, and for that reason we find no merit to this position taken by plaintiffs.
We think the jurisprudence is established to the effect that where a statute is enacted to protect the class of persons in which the plaintiff is included against the type of loss or injury which in fact has been sustained, an unexcused violation of such a statute is "negligence per se," and this negligence is actionable if it is a legal or proximate cause of the accident. Dixie Drive It Yourself System, Inc. v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962); Maggiore v. Laundry & Dry Cleaning Service, Inc., La.App. Orl., 150 So. 394; Steagall v. Houston Fire & Casualty Insurance Company, La. App. 3 Cir., 138 So.2d 433. See also: 38 Am.Jur., Negligence, Sections 158-167; 22 Tulane Law Review 522; Prosser on Torts, Section 34, p. 161; 2 Harper & James, Section 17.6.
In Dixie Drive It Yourself System, Inc. v. American Beverage Company, supra, the Supreme Court held that a violation of LSA-R.S. 32:241 constituted negligence per se, and that under the circumstances presented there such negligence was a legal cause of the accident and accordingly it was actionable. In so holding, the court said:
"The statute was designed to protect life and property on the highways. It is a safety measure. The violation of its provisions is negligence per se, and this negligence is actionable if it was a legal cause of the collision."
In the instant suit we are convinced that the negligence of Mrs. Moses in parking on *268 the main traveled portion of this highway at a point where the view of an approaching motorist was obstructed to some extent by a curve in the road, and at a time when weather conditions made it difficult to see a parked vehicle, did constitute a proximate, legal and contributing cause of the accident, which bars plaintiffs from recovery.
For the reasons herein assigned, therefore, the judgment appealed from is affirmed. All costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.