192 So.2d 679 (1966)
Glynn J. HERNANDEZ, Plaintiff and Appellee-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant and Appellant-Appellee.
No. 1843.
Court of Appeal of Louisiana, Third Circuit.
December 1, 1966.
Rehearing Denied December 21, 1966.
Dissenting Opinion December 23, 1966.
Writ Refused February 3, 1967.
*680 Stockwell, St. Dizier, Sievert & Viccellio, by Robert W. Clements, Lake Charles, for defendant-appellant-appellee.
Rogers, McHale & St. Romain, by Robert M. McHale, Lake Charles, for plaintiff-appellee-appellant.
E. C. Hamilton, Lake Charles, for defendant-appellee.
Before FRUGÉ, CULPEPPER and HOOD, JJ.
HOOD, Judge.
Plaintiff, Glynn J. Hernandez, sues for damages for personal injuries which he sustained as a result of a collision between an automobile which he was driving and an automobile owned by Felton Paul Boutte. The suit was instituted against Boutte and against State Farm Mutual Automobile Insurance Company. Judgment on the merits was rendered by the trial court in favor *681 of plaintiff and against both defendants. State Farm appealed suspensively. Plaintiff appealed devolutively, contending only that the amount of the award should be increased. The remaining party to the suit, Boutte, has not appealed and he has not answered either of the appeals which were taken.
The accident occurred on December 25, 1964. Plaintiff at that time, with the consent of the owner, was driving a Mustang automobile owned by W. T. Baggett. State Farm previously had issued a standard automobile insurance policy to Mr. Baggett covering that automobile, and that policy was in effect at the time of the accident. Also in effect at that time was a Family Automobile Policy previously issued by State Farm to plaintiff's father, Andrus Hernandez, which included as an "insured" under its coverage any resident of the same household of the named insured. Plaintiff resided in the household of his father. He clearly is entitled to be classified as an "insured" under both of these insurance contracts.
Each of these policies contained an "uninsured motorist" provision, under the terms of which the insurer obligated itself to pay all sums which the insured shall be legally entitled to recover from an uninsured motorist because of bodily injury caused by accident and arising out of the use of such uninsured automobile. State Farm, therefore, would be liable under the uninsured motorist provision of these policies if it should be established that Boutte was an uninsured motorist and that he is legally liable in damages to plaintiff for the bodily injuries which plaintiff sustained as a result of this accident. There was no contractual relationship between Boutte and State Farm, so the latter is not obligated to indemnify Boutte and it has no duty or right to provide a defense for him in this action.
The trial judge concluded that Boutte was uninsured, that the proximate cause of the accident was Boutte's negligence, that plaintiff was free from contributory negligence, and that plaintiff thus was entitled to recover against both defendants.
State Farm contends that the trial court erred in the following particulars: (1) In finding that plaintiff had proved that Boutte was uninsured, within the definition of that term in the policies, at the time of the accident; (2) in concluding that plaintiff was free from contributory negligence; (3) in awarding excessive general damages; and (4) in awarding a sum of money as special damages when there was insufficient proof to justify such an award.
We will consider first the question of whether the trial court erred in finding that plaintiff Hernandez was free from contributory negligence.
The accident occurred at about 2:00 a. m. on a Christmas morning, on the west incline of the Calcasieu River Bridge at Lake Charles. For about four hours prior to the accident plaintiff had been attending a Christmas Eve Party at the Moulin Rouge Night Club, located west of Lake Charles. A few minutes before the accident, he left that club to go to another establishment on the east side of Lake Charles, where he planned to join some friends. It was while he was attempting to cross the above mentioned bridge en route to join his friends at another place that the collision occurred. There are four lanes of traffic on that bridge, with a divider separating the two east bound lanes from the two west bound lanes.
It was a dark night, and there was a dense, heavy fog in that area at the time the accident occurred. Visibility was rated by the U. S. Weather Bureau as being zero, and the evidence shows that visibility was so poor on the bridge, because of darkness and fog, that it was impossible for the driver of a car, with adequate burning headlights, to see a vehicle ahead of him until he reached a point within two or three car lengths from it.
*682 Plaintiff, while driving in an easterly direction, reached a point about midway up the west incline of this bridge when he saw the Boutte car parked or stalled without lights immediately in front of him in the south or outside lane of traffic. As soon as he saw the stalled vehicle, he turned to his left in an effort to avoid striking it, but nevertheless the right front portion of his car struck the left rear portion of the Boutte vehicle. As a result of this accident, both cars were damaged and plaintiff sustained the injuries which form the basis of this suit.
Plaintiff testified that he was driving between 25 or 30 miles per hour at the time the collision occurred. Shortly after the accident he told the investigating officer that he "couldn't have been going over 40." He conceded that it was "extremely foggy," that visibility was "very, very bad," that the roadway was damp, and that he realized that because of the fog he had to drive slower than normal. He stated that he was not more than two or three car lengths from the stalled vehicle when he first saw it, that he swerved to his left as quickly as he could, but that he was unsuccessful in his attempt to avoid a collision. He testified that there was no other traffic on the bridge, and that there was nothing to prevent him from passing the parked car in the adjacent lane of traffic if he had managed to get into that lane in time.
Miss Janis Fleury, who was riding as a passenger in the front seat of the car which plaintiff was driving, testified that he was traveling about 40 miles per hour as he approached the bridge, but that she told him to drive a little slower, and he then slowed down to about 30 or 35 miles per hour and was driving at that speed when the collision occurred. She stated that she first saw the parked vehicle in front of them when they were about two car lengths from it, that she then told plaintiff to "watch out," that Hernandez had done or said nothing prior to the time she gave him that warning to indicate that he had seen the car ahead of him, and that immediately after she warned him he turned to his left in an attempt to avoid striking the car.
The state trooper who investigated the accident found that upon his arrival the Boutte automobile was about 25 or 30 feet further up the bridge than was plaintiff's car, indicating that the blow was sufficiently severe to knock the stalled vehicle that far. He stated that there was a "real heavy, soupy fog" at the time.
We agree with the trial court that defendant Boutte was negligent in permitting his vehicle to remain parked on the bridge, without lights on a foggy night, without providing some type of warning or protection for approaching motorists. We also concur in his finding that plaintiff was driving at a speed of approximately 25 to 30 miles per hour as he approached the stalled vehicle, that he swerved to his left as soon as he saw it, but that he nevertheless was unable to avoid a collision. We cannot agree with the trial judge's conclusion, however, that the speed of plaintiff's automobile was not excessive under the circumstances or that he was free from contributory negligence.
The jurisprudence of this state is firmly established to the effect that when visibility is materially impaired because of smoke, mist, dust, fog or other atmospheric conditions, a motorist is held to a duty of operating his vehicle with an unusually high degree of care. He should reduce his rate of speed to such an extent, and keep his car under such control as to reduce to a minimum the possibility of accident from collision. And, as an extreme measure of safety, it is his duty when visibility ahead is not possible or is greatly obscured, to stop his car and remain at a standstill until conditions warrant going forward. He does not have the right to assume that his course of travel is free from danger or obstruction in the absence of his ability to see clearly ahead, and if he continues to travel as if he knew there *683 was perfect clearance ahead, he does so at his own risk and peril. Culpepper v. Leonard Truck Lines, Inc., 208 La. 1084, 24 So. 2d 148; Demerest v. Travelers Insurance Co., 234 La. 1048, 102 So.2d 451; Ardoin v. Southern Farm Bureau Casualty Ins. Co., 133 So.2d 129 (La.App.3d Cir.1961); and Moses v. Mosley, 146 So.2d 263 (La. App.3d Cir.1962).
Exceptions to the general rule have been made in a number of cases where, because of unusual or extraordinary circumstances which have been found to exist in those particular cases, the driver of the moving vehicle was held to be free from actionable negligence in colliding with a stationary object on the road ahead of him. See Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377, and later cases based on that decision. In the instant suit, however, we find that the presence of the stalled, unlighted Boutte automobile on the incline of this bridge did not constitute such an unusual or extraordinary circumstance as to excuse Hernandez from reducing his speed and from maintaining control over the vehicle he was driving while his visibility was greatly impaired. We find no reason or basis for excepting him from the above stated general rule.
It is apparent from plaintiff's own testimony in the instant suit that in view of the weather conditions and the poor visibility which existed at the time of the accident, plaintiff was negligent in failing to reduce his rate of speed to such an extent that he could stop within the range of his vision and in failing to keep his car under such control as to reduce to a minimum the possibility of accident from collision. His negligence in those respects clearly was a proximate and contributing cause of the accident, barring him from recovery.
Our conclusion is that the trial court erred in holding that plaintiff was free from contributory negligence. Because of his contributory negligence, plaintiff is not legally entitled to recover from the uninsured motorist the damages which he sustained as a result of this accident. The judgment appealed from, therefore, must be reversed insofar as it condemns the appellant, State Farm, to pay damages and costs. In view of this finding, it is unnecessary for us to consider any of the other assignments of error urged by that defendant.
Although we have concluded that plaintiff is barred from recovery against State Farm, we must affirm the judgment which has been rendered in favor of plaintiff and against defendant Boutte, since that defendant did not appeal and did not answer the appeal. We also note that in the answer filed by Boutte in this suit he did not plead contributory negligence on the part of plaintiff.
Although we have concluded that plaintiff is not legally entitled to recover damages from the uninsured motorist, and thus State Farm is not liable under the above mentioned policies, the judgment in favor of plaintiff and against Boutte must remain in effect because of the failure of Boutte to plead contributory negligence and to appeal. Under these circumstances, there remains for determination the issue of whether the award of general damages should be increased, that issue having been raised by plaintiff's appeal.
The injuries sustained by plaintiff consisted of a large laceration of the forehead which required 18 stitches for closure, and a minor knee injury which required no treatment and which cleared up within a few days. Although the laceration on the forehead healed in due course, a slight keloid has formed which makes the remaining scar more noticeable than it otherwise might have been. The residuals existing from this accident which would be of a permanent nature are the scar and a slightly diminished sensation in the region of the scar.
The trial judge awarded plaintiff the sum of $1,500 as general damages for *684 these injuries. While the award ordinarily would appear to be inadequate because of the permanent nature of the scar, we have decided that it is within the range of the "wide discretion" which is vested in the trial court, and that we will not disturb the award. See Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149; and Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64.
For the reasons herein set out, the judgment appealed from is reversed insofar as it condemns defendant, State Farm Mutual Automobile Insurance Co., to pay damages or costs, and judgment is hereby rendered in favor of that defendant, and against plaintiff, rejecting plaintiff's demands against State Farm Mutual Automobile Insurance Company. The judgment appealed from is affirmed in all other respects, and particularly it is affirmed insofar as it is in favor of plaintiff and against defendant Felton Paul Boutte. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed in part, and reversed in part.
On Application for Rehearing.
En Banc. Rehearing denied.
TATE, Judge (dissenting from denial).
The majority opinion holds the plaintiff Hernandez contributorily negligent for driving into the rear of Boutte's automobile. Boutte was parked without lights at two o'clock in the morning on the west incline of the four-lane Calcasieu River bridge. This is a link in the no-access Interstate Highway system.
Although visibility was poor, the preponderance of the evidence reflects, as I shall shortly show, that a safe driving speed at the time and place of the accident was from 35-40 mph. Hernandez, driving at a speed of 25-30 mph, did not observe the blackened car in his path until too close to avoid colliding with it. The trial court correctly held that Hernandez' speed was not excessive under the evidence contained in this record.
The plaintiff driver must therefore be held free of contributory negligence. The more recent decisions of the Louisiana Supreme Court can fairly be characterized as holding that a night motorist may assume that the road ahead is safe for his travel, so that he is not negligent for failing to observe, in time to avoid colliding with, a negligent obstruction to his travel which the motorist had no reason to anticipate he would encounter on the highway. Suire v. Winters, 233 La. 585, 97 So.2d 404; Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127; Vowell v. Manufacturers Casualty Ins. Co., 229 La. 798, 86 So.2d 909; Dodge v. Bituminous Casualty Corp., 214 La. 1031, 39 So.2d 720.
As we noted in Fontenot v. Lafleur, La. App. 3 Cir., 124 So.2d 607, 608, certiorari denied: "* * * a night motorist is not negligent for a failure to perceive and a consequent failure to avoid colliding with an obscured vehicle obstructing his path on the traveled portion of the highway, if such motorist could not reasonably have anticipated that his traffic lane was so obstructed * * *." See also Puissegur v. Louque, La. App. 1 Cir., 113 So.2d 795.[1]
Under modern conditions of travel, the criminal obstruction of a no-access through highway by parking a darkened car on the incline of a bridge is completely unforeseeable. *685 A motorist who collides with such an object, when otherwise free of negligence, should not be held negligent for failing to appreciate that the darkened shadow ahead was such a completely unforeseeable obstruction on the highway. Had, for instance, the Boutte lights been left on, however dimthe oncoming motorist, alerted a little sooner, could have veered into the other lane and passed safely.
With regard to the present case, I perhaps would not dissent if the visibility was indeed so poor that it was unsafe for the motorist to do anything but stop. (Of course, by so doing he would undoubtedly create a hazard to traffic approaching from his rear, who under conditions of twentieth century driving do not expect that anyone will completely stop his vehicle on a bridge!) Although stopping is an unrealistic standard of conduct which hardly any modern motorist actually followssince he sensibly expects that no one else will stop a vehicle dead on the travel lanes of the highway, perhaps the majority's holding might have been justified by the jurisprudential rule developed for country road situations, which requires stopping the vehicle rather than continuing to travel with vision obscured. See, for instance, Moses v. Mosley, La.App. 3 Cir., 146 So.2d 263.
However, on reading the record I find that the majority opinion has overlooked preponderant testimony that visibility was not so obscured as described. In the first place, the United States Weather Bureau's rating of visibility as being zero was based upon the fog conditions at the weather station some ten miles distant from the bridge scene of the accident; the Weather Bureau witness admitted he had no record or idea what the visibility was at the bridge! Tr. 128-29. In the second place, the investigating state trooper, after being qualified as an expert as to safe speeds at the time and under the circumstances of the accident, stated positively, Tr.: "* * * considering the fog and everything, I would say 35 or 40 miles an hour would be the fastest you could go at a safe speed." (The plaintiff motorist, at 25-30 mph, was proceeding within these safe limits.)
I find no testimony in the record that one could not actually see a vehicle ahead of him until within two or three car lengths of it, if one was looking for the vehicle. The only testimony I find is that this particular driver and his passenger stated that they did not notice the Boutte vehicle, so unforeseeably in their path, until they were within that distancebut of course this is the type of testimony that we find in all of these cases concerning night motorist collisions with unexpected objects.
For the reasons previously stated, therefore, I respectfully dissent from the majority's reversal of the trial court's judgment and of that court's considered holding, based upon the preponderant and indeed uncontradicted evidence in the record, that "The speed of the plaintiff's automobile was not excessive under the circumstances, and he did what he could to avoid the accident, but was unable to do so." (Tr. 72. Reasons for judgment, District Court.) I respectfully suggest that, by disregarding this justified holding by the trier of fact, the majority has exceeded the proper bounds of appellate review, which require that appellate courts do not arbitrarily substitute their own findings of fact for those reasonably reached by the trier of fact.
NOTES
[1] See Professor Wex Malone's comments on the erosion of the "assured clear distance" rule in the annual symposiums on the work of our state supreme court at 19 La.L.Rev. 338 (1959), 18 La.L.Rev. 68 (1957), and 17 La.L.Rev. 346-348 (1957). In these commentaries, Professor Malone suggests that we should frankly realize that the old "assured clear distance" rule has been modified to reflect modern conditions, so that "`the duty could now be appropriately described as one merely obliging the driver to maintain such control and speed as will enable him to bring his car to a reasonable stop if faced with a sudden obstruction in his path of travel.'"