CULPEPPER, Judge.
Robert C. Grimes filed this suit for damages against Sam A. Rivers, Sr., and his liability insurer, Dixie Auto Insurance Company, as a result of a collision between a truck driven by Grimes and a parked, pulpwood truck owned by Rivers. The trial court rendered judgment for defendants and dismissed plaintiff’s suit. Plaintiff appealed.
The sole issue is whether plaintiff was contributorily negligent.
The collision occurred between 6:30 and 7:00 o’clock in the morning on a two-lane, hard surfaced road in a rural area. The trial court found that “darkness prevailed and a heavy fog enveloped the area including the scene of the collision.” As a result of the fog, the road was wet and slippery and visibility was severely restricted.
Plaintiff was driving his truck in an easterly direction with his headlights burning. A truck driven by Brad Falcon, Jr., an employee of defendant, Sam A. Rivers, was parked on the south side of the highway, in front of Rivers’ home.
Plaintiff testified that defendants’ truck protruded two or three feet onto the blacktop portion of the highway. The driver of the Rivers truck and the investigating officer testified that the truck was parked on a downward angle along the shoulder of the road, with the left rear wheels of the vehicle touching the edge of the blacktop and a portion of the left rear of the truck body extending slightly over the blacktop itself. The district court found that the evidence did not establish with certainty how much of the truck body extended over the blacktop. However, defendants concede that the Rivers truck was negligently parked.
The defense is that plaintiff’s failure to reduce his speed while traveling in dense fog, coupled with his failure to take evasive action to avoid the collision, after he saw the parked truck, were substantial factors contributing to the accident.
Plaintiff argues that he was traveling at a safe speed. He also contends that the headlights of an approaching vehicle blurred his vision so that he did not see the Rivers vehicle until it was too late to take evasive action to avoid a collision.
The testimony of various witnesses placed the speed of plaintiff’s vehicle at anywhere between 35 to 55 miles per hour. Plaintiff himself said in his deposition that his speed was “between thirty-five and forty-five”. The trial court placed great weight on the testimony of the investigating officer,' State Trooper Joe R. Byles. His testimony reflects that plaintiff said he had been traveling about 40 — 45 miles per hour prior to impact.
According to plaintiff’s testimony, his vision was impaired by the lights of an oncoming vehicle. But he admits in his deposition that its headlights did not really bother him.
Plaintiff testified that after he passed the oncoming vehicle he first observed the Rivers’ vehicle at a distance of 40 feet. However, in his statement to an insurance adjuster a few days after the collision, he estimated the same distance to be 35-40 yards, or approximately 105-120 feet. Defendant’s son, an eyewitness, testified that plaintiff passed the oncoming vehicle 100 feet before he reached the pulpwood truck.
Plaintiff also testified that he applied his brakes five to eight feet before the point *741 of impact, causing the right front of his truck to skid into the outside, left-rear wheel of defendant’s vehicle. The trial court found that “this testimony [was] in direct conflict with that of the investigating officer, who arrived shortly after the collision, and who testified that there were no skid marks.”
At no time did plaintiff attempt to steer his. vehicle to the left despite testimony to the effect that, had he done so, the accident would have been avoided. The evidence also establishes that he could have accomplished this maneuver without crossing into the west-bound lane of traffic.
In Ardoin v. Travelers Insurance Company, 229 So.2d 426, 429 (La.App.1969), we stated the applicable law as follows:
“When visibility is materially impaired because of smoke, mist, dust, fog or other atmospheric conditions, a motorist is held to a duty of operating his vehicle with an unusually high degree of care. He should reduce his rate of speed to such an extent, and keep his vehicle under such control as to reduce to a minimum the possibility of accident from collision. And, as an extreme measure of safety, it is his duty when visibility ahead is not possible or is greatly obscured, to stop his vehicle and remain at a standstill until conditions warrant going forward. He does not have the right to assume that his course of travel is free from danger or obstruction in the absence of his ability to see clearly ahead, and if he continues to travel as if he knew there was perfect clearance ahead, he does so at his own risk and peril.” (citations omitted)
Applying this rule to the facts herein, we conclude that the trial court was correct in barring plaintiff’s recovery as a result of his contributory negligence in traveling at an excessive speed under the circumstances. Costs of this appeal are assessed against the plaintiff.
Affirmed.