647 So.2d 668 (1994)
Edward BROWN and Gwen Brown, Plaintiffs-Appellees,
v.
BEAUREGARD ELECTRIC COOPERATIVE, INC., Defendant-Appellant.
No. 94-512.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1994.
Writ Denied March 10, 1995.
*670 George Michael Canaday, John Ezell Jackson, Lake Charles, for Edward Brown et ux.
*671 Charles Harper, Lilynn Annette Cutrer, Lake Charles, for Beauregard Elec. Co-op., Inc.
Charles M. Jarrell, Opelousas, for Louisiana Employer's Safety Ass'n.
Before GUIDRY, C.J., and YELVERTON, KNOLL, THIBODEAUX and WOODARD, JJ.
WOODARD, Judge.
This appeal arises from a jury award to plaintiffs for injuries and loss of consortium caused by an automobile accident.

FACTS
While relocating a utility pole on March 7, 1990, defendant, Beauregard Electric Cooperative (Beauregard) temporarily obstructed one side of a rural highway, thus narrowing the road to one lane. Beauregard employees permitted traffic to flow in each direction for several minutes before alternating the direction of travel. As a precaution against accidents, the employees had stationed a flagman 100-150 feet from the job site who used bright orange gloves to warn approaching motorists to slow down. They did not wear orange vests or use flags or "slow/stop" paddles. Beauregard also placed a "Men Working" sign on the left side of the road 600 feet from the site.
Plaintiff, Edward Brown, was driving a fully loaded 18-wheel gravel truck for his employer, John Richey (Richey), when he rounded a curve 500 feet from the job site and noticed that traffic was stopped in his lane. He attempted unsuccessfully to slow his truck and swerved into the other lane being unable to stop his truck in time to avoid striking the cars in front of him. His truck hit several oncoming cars, and he was thrown to the ground as the truck overturned in a ditch.
As passers-by came to his aid, Mr. Brown continued to lie on the ground, complaining of pain in his back. He was taken to the hospital, where his injury was diagnosed as a T-12 compression fracture. Within several months he was released to return to work with no restrictions. He continued to experience back pain, however, and a CT scan in 1993 revealed a herniated L4-5 disc.
Mr. Brown filed suit against Beauregard, alleging that Beauregard's negligence had caused his back injury. His wife also sued, seeking damages for loss of consortium. The jury apportioned fault 50% to Beauregard, 35% to Richey, and 15% to Mr. Brown. The jury then awarded Mr. Brown $250,000 in globo for his injuries, and Ms. Brown $50,000 for loss of consortium. Richey was immune from suit because he was Mr. Brown's employer, and his fault was therefore disregarded. Thus, judgment was rendered against Beauregard in the amounts of $192,308 for Mr. Brown and $38,462 for Ms. Brown, representing 50/65ths of the jury's damage awards.
Beauregard appealed, contending that the trial court erred in finding Beauregard at fault and that the damage awards were excessive. Mr. and Ms. Brown answered the appeal seeking an increase in quantum and damages for frivolous appeal.

LAW

APPORTIONMENT OF FAULT
It is well settled that a public utility undertaking repair work alongside a highway, such as Beauregard, must do so in a reasonably safe and careful manner, so as to minimize the risk of accident to the motoring public. Kitchen v. Malvon Constr. Co., 520 So.2d 799, 803 (La.App. 3 Cir.1987). Encompassed within this general duty is the specific duty to warn motorists adequately of highway obstructions. Richey, as the owner of a commercial hauling truck, was bound to ensure that the truck was in proper working condition and met all applicable safety standards. Mr. Brown, as a motorist, was bound to maintain a proper lookout and to retain control of his truck. In such situations, in which several dangerous hazards combine to produce an accident, comparative fault is applicable. Monceaux v. Jennings Rice Drier, Inc., 590 So.2d 672, 674-75 (La.App. 3 Cir. 1991).
In assigning degrees of comparative fault, we must consider (1) whether the actors' conduct resulted from inadvertence, (2) the magnitude of the risk created by their *672 conduct, (3) the significance of the intended results of their conduct, (4) the actors' relative capacities, and (5) any extenuating circumstances requiring haste. Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967, 974 (La.1985). Apportionment of fault is an issue of fact, and the jury's findings in this respect should not be disturbed on appeal in the absence of manifest error. Monceaux, 590 So.2d at 676. The jury's apportionment of fault cannot be manifestly erroneous if it is reasonable in light of the record viewed in its entirety. Stobart v. State, DOTD, 617 So.2d 880, 885 (La.1993).
A former Richey employee testified at trial that Richey did not maintain the truck properly, and expert testimony indicated that Mr. Brown would have been able to stop the truck in time to avoid an accident if the brakes had been working properly and Mr. Brown had been paying adequate attention to the road. However, Beauregard's precautions did not inform motorists of the precise nature of the road conditions ahead; a reasonable motorist might not have anticipated traffic stoppage within 600 feet of the sign or within 150 feet of the flagman. Moreover, the sign was on the wrong side of the road. There was no warning of the presence of the flagman, and it appears that the flagman was not himself adequately equipped to warn of the potentially dangerous road conditions just ahead. Beauregard possessed the superior ability to take the precautions necessary to ensure safety. The jury could have reasonably decided that a reasonable motorist would not have been sufficiently alerted of the potentially dangerous conditions ahead, and therefore the finding that Beauregard was 50% at fault in causing the accident is not manifestly erroneous.

CAUSATION
The parties agree that the 1990 accident caused Mr. Brown's thoracic compression fracture, but they disagree as to whether his bulging lumbar disc resulted from this accident or a subsequent fall from atop a trailer in 1992. Given the amount of damages awarded to Mr. Brown, however, it is clear that the jury resolved this issue in his favor.
A plaintiff must prove by a preponderance of the evidence the existence of a causal relationship between the accident and the injuries he claims. A jury's determination whether the plaintiff has carried this burden is a finding of fact that will not be disturbed on appeal unless it is manifestly erroneous. Housley v. Cerise, 579 So.2d 973, 978-79 (La.1991). When the factfinder resolves this issue in the face of conflicting testimony and other evidence, that conclusion will not be disturbed unless (1) the favored testimony is internally inconsistent or implausible on its face, or (2) objective evidence or reliable documents so contradict the witness's story that it is insupportable based upon the record viewed as a whole. Stobart, 617 So.2d at 882.
Mr. Brown was neither diagnosed with nor treated for a lumbar injury until after the 1992 fall. Additionally, the medical evidence linking the injury with the 1990 accident was suspicious: Mr. Brown's treating physician testified that Mr. Brown told him that his lower back pain began after the accident, despite his earlier statements to that physician that the pain began after the 1992 fall. Mr. Brown altered the history of his back injury less than one week before the trial began. Finally, the parties' experts disagreed as to whether Mr. Brown induced a false assessment of his work capability by performing submaximally on a disability-rating test.
However, the jury apparently believed Mr. Brown's testimony regarding the chronology of his injuries, and the determination of his credibility lies wholly within the jury's discretion. No objective evidence requires the conclusion that his lumbar injury resulted from the 1992 fall, rather than the 1990 accident, and some hospital records indicate that Mr. Brown complained of lower back pain as early as the date of the accident. Kenneth Max Thomason, who witnessed the accident, stated that Mr. Brown complained of back pain immediately afterwards, and Chad Cormier, an emergency medical technician who treated Mr. Brown at the scene of the accident, testified that he complained of lower back pain that stretched down into his hip area. Mr. Cormier further testified that *673 Mr. Brown's complaint included the L4-5 disc in the lumbar area of his spine. Thus, reasonable jurors could have believed that Mr. Brown's complaints encompassed a lumbar as well as a thoracic injury to his back, and the jury did not err manifestly in attributing the lumbar injury to the 1990 accident.

QUANTUM
The discretion afforded the trier of fact in determining a plaintiff's general damages is "great" and "vast," so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Transport Corp., 623 So.2d 1257, 1261 (La.1993). Accordingly, we will alter the quantum of damages awarded to Mr. Brown only if the award is above or below that which a reasonable trier of fact could assess under the particular circumstances of the case. Id. at 1261.
Mr. Brown suffered a T-12 compression fracture, which healed in approximately 6 months, and a bulging lumbar disc. Significant testimony at trial established that the injuries caused Mr. Brown constant pain, affected his personality, and caused mood swings that, to some degree, hastened the dissolution of his marriage. He is only 35 years old, and a treating physician testified that he can no longer engage in significant physical labor. A vocational expert testified that there are no jobs that Mr. Brown can perform, given his disability and lack of education.
Although the evidence is not so compelling as to warrant increasing Mr. Brown's damage award, we believe that the jury did not err manifestly in awarding him $250,000 in globo. Consequently, disregarding Richey's fault, see Franklin v. Oilfield Heavy Haulers, 478 So.2d 549, 557 (La.App. 3 Cir.1985), Mr. Brown's award is $192,307.69, or 50/65ths of the total damage award.

LOSS OF CONSORTIUM
Ms. Brown testified that she and Mr. Brown were married for more than 9 years and that their divorce on September 30, 1993 was caused by her inability to cope with her husband's attitude changes after the accident. She further testified that, after the 1990 accident, Mr. Brown no longer helped with household chores and lost interest in taking her out dancing.
However, Ms. Brown filed a petition for legal separation in 1985. The couple was in the midst of domestic litigation and seemed destined for marital dissolution, which eventually occurred just prior to trial. Ms. Brown also filed petitions for protective orders in 1989 and 1992, in which she alleged that her husband repeatedly physically abused her and their children. It was within the jury's discretion to credit Ms. Brown's testimony that the injury placed strain on their marriage, and that the Browns' relations prior to the accident were sufficiently strong to justify an award of damages for their loss. Clearly, however, under the facts of the case sub judice, $50,000 is overly generous, and constitutes abuse of the jury's discretion. We conclude that the highest amount within the jury's discretion was $10,000. See Edenfield v. Vahid, 621 So.2d 1192 (La.App. 3 Cir.), writ denied, 629 So.2d 1171 (La.1993); Duhon v. Petroleum Helicopters, Inc., 554 So.2d 1270 (La.App. 3 Cir.1989), writ denied, 559 So.2d 1360 (La.1990). Disregarding Richey's fault, we award Ms. Brown $7,700, or 50/65ths of her total damages for loss of consortium.

FRIVOLOUS APPEAL
Damages for frivolous appeal are properly awarded only when "the proposition advocated is so ridiculous or so opposed to rational thinking that it is evident beyond any doubt that it is being deliberately professed for ulterior purposes." Gulf Coast Bank v. Robino, 634 So.2d 1190, 1194 (La. App. 3 Cir.), writ denied, 635 So.2d 1101 (La.1993). Based on our disposition of the case, and in light of the closely contested issues raised, it is clear that damages for frivolous appeal are not warranted.

CONCLUSION
For the foregoing reasons, we affirm the decision of the trial court awarding damages to Edward Brown in the amount of $192,307.69. We affirm the decision of the trial court awarding damages to Gwen Brown, as amended to reflect a reduction to $7,700. *674 Costs of this appeal are assessed against appellants.
AFFIRMED AS AMENDED.
GUIDRY, C.J., dissents in part for written reasons.
KNOLL, J., dissents in part for the reasons assigned by GUIDRY, C.J.
GUIDRY, Chief Judge, dissenting.
I find the jury's general damage award to Edward Brown of $250,000 to be clearly excessive and an abuse of discretion and would reduce same to $80,000. I would correspondingly reduce the medical expenses award. In all other respects, I agree with the opinion of the majority.
My disagreement with the jury and with the majority of my colleagues in this case is traced to one of the principal issues, i.e., whether Brown's thoracic spinal fracture at T-12 and his later discovered L4-5 right side disc abnormality were both caused by the accident of March 7, 1990. The jury and the majority on this appeal apparently conclude that plaintiff established by a preponderance of the evidence that both injuries were caused by the March 1990 accident. I disagree finding that the record evidence is to the contrary.
The plaintiff has the burden of proving by a preponderance of the evidence a causal relationship between the accident and the injuries claimed. Whether this burden has been met is a question of fact which will not be disturbed on appeal unless it is clearly wrong. Housley v. Cerise, 579 So.2d 973 (La.1991), on remand, 597 So.2d 71 (La.App. 4th Cir.1992), writ denied, 600 So.2d 646 (La.1992); Doucet v. B & R Petroleum Services, Inc., 546 So.2d 626 (La.App. 3rd Cir. 1989). Where there is a conflict in testimony and evidence and the factfinder's resolution of the issue resulted from a credibility determination, the factfinder's conclusion will not be disturbed unless: (1) the favored testimony is so internally inconsistent or implausible on its face; or (2) objective evidence or reliable documents so contradict the witness' story such that it is insupportable based upon the record reviewed as a whole. Stobart, supra; Rosell v. ESCO, 549 So.2d 840 (La.1989).
Brown asserts that both his thoracic spinal fracture and L4-5 right side disc herniation were caused by the accident in question. Beauregard agreed that the accident caused the thoracic fracture but disputes causation insofar as the herniated lumbar disc is concerned. Beauregard contended that the herniated disc, if it exists, was caused by a July 8, 1992 fall from Brown's trailer. The parties stipulated that medical costs from March 7, 1990 to July 8, 1992 were $6,110.18. From July 8, 1992 to the date of trial, medical expenses totalled $6,396.24.
Dr. Nathan Cohen initially treated Brown in the emergency room and followed his recovery until discharge on August 29, 1990. He diagnosed the T-12 25% compression fracture and released Brown from the hospital on March 13, 1990. No neurological deficits were detected. Dr. Cohen prescribed the use of a back brace and rest. On August 29, 1990, Dr. Cohen released Brown to return to work with no limitations and recommended no further medical treatment or surgery. He suggested that Brown gradually wean himself off the back brace: Brown thereafter returned to work. Dr. Cohen clearly explained that he treated Brown only for the T-12 fracture and that reference in his notes to "dorsal lumbar spine region" meant only T-12 and not the lower lumbar spine. Brown never complained of lower lumbar pain during the nearly six months during which Dr. Cohen treated him. In Dr. Cohen's opinion, it was less than likely that Brown's L4-5 pain complaints were related to the 1990 accident, assuming he was involved in the subsequent 1992 accident.
On August 30, 1991, Brown was first examined by Dr. David Steiner, an orthopedic surgeon. Dr. Steiner did not testify. He ordered a magnetic resonance imaging test (MRI) on Brown's lumbar spine on March 11, 1992. The MRI revealed a left-sided bulge at L-5, S-1.
Dr. Dean Moore, a neurosurgeon, first examined Brown on August 3, 1992 after his fall from the trailer. According to Dr. Moore, Brown told him at this initial visit that his low back pain with radiation into the *675 right leg began after his July 8, 1992 fall from the trailer. A straight leg raising test was positive at 60 degrees, and Brown could only bend his torso forward to 30 degrees past vertical. Dr. Moore detected muscle spasms in the lumbar spine. On a January 13, 1993 visit, Brown complained again of lower back pain radiating to his right leg. Dr. Moore prescribed physical therapy and ordered a CT scan, the results of which "didn't help much". In conjunction with a March 17, 1993 visit, Dr. Moore ordered a MRI and an electromyogram (EMG). According to Dr. Moore, "[A]ll of [the tests] showed a little bulging of the L4-5 disc, but it was on the wrong side, and the EMG ... was not normal, but it didn't have anything to do with a back injury". In May of 1993, Dr. Moore ordered a functional capacity evaluation and, depending upon the results thereof, a work hardening program. The functional capacity evaluation was performed by physical therapist David Regan, who found inconsistencies between Brown's capabilities and the evaluation results. Regan, found that Brown was trying to manipulate the test results. After receiving the functional capacity evaluation report from Regan, Dr. Moore ordered a myelogram, a discogram and a post-myelogram CT scan. The CT scan revealed a bulging L4-5 disc and, according to Dr. Moore, "... on using the retrospectoscope or looking behind-sight, we could again see narrowing of the foramen from disc herniation on the MRI that he had done previously". However, Dr. Moore stated that, on all tests performed, the disc was shown bulging more on the left side than the right side. he recommended surgery and stated that such a procedure would cost $16,000 including his fee plus the hospital fee.
On December 2, 1993 (one week before trial), Dr. Moore had Brown return to talk about his history. At this meeting, Brown told Dr. Moore that his lower back pain began as a result of the March 7, 1990 accident and not the July 8, 1992 fall as he had previously reported. Brown told Dr. Moore that he had misunderstood him on the first visit. Based on this "corrected history", Dr. Moore causally related the L4-5 disc herniation to the 1990 accident. Based on the "prior history" however, Dr. Moore candidly conceded that he could not causally relate the low back pain at L4-5 to the 1990 accident. He stated that his relation of the L4-5 disc herniation to the accident at issue is solely dependent upon which of the two histories is correct.
The only evidence presented which causally links the two is the testimony of plaintiff and Dr. Moore. After plaintiff underwent a battery of, in some instances, repetitive diagnostic tests with no positive findings, Dr. Moore finally located a bulging L4-5 disc on a post-myelogram CT scan. This test was performed three and one-half years post accident. Even then Dr. Moore could not connect the accident to the herniated disc because he had been told by Brown himself that his lower back pain commenced after the intervening July 8, 1992 fall. It was only after Dr. Moore took a "corrected history" from Brown, after treating him for over a year, that he could relate the 1990 accident to the L4-5 herniation. With all due respect to Dr. Moore, such conclusion is extremely tenuous at best, considering the opposing evidence.
Brown never complained of lumbar pain to Dr. Cohen and was discharged to return to work on August 29, 1990. Thereafter, he worked continuously for nearly two years until his second accident, on July 8, 1992, after which he first saw Dr. Moore. Additionally, no diagnostic test performed in the three and one-half years between the 1990 accident and the trial turned up any L4-5 problem until the November 1993 CT scan. Brown's own testimony seriously conflicts with the "original history" that he gave to Dr. Moore, upon whose opinion (based on the "corrected history") he relies to establish causation. His testimony is inconsistent with what he previously reported and reliable medical documents. It is abundantly clear that Brown's L4-5 disc problems were caused by the July 8, 1992 fall from the trailer. The jury's conclusion otherwise is clearly wrong, and the jury's award of general damages and related medical expenses is clearly excessive.
For these reasons, I respectfully dissent.