KNOLL, J.,
dissents.
hi respectfully dissent from the majority in this per curiam opinion.
As an initial matter, I do not believe this case is worthy of this Court’s attention, as it presents no conflict of authority, no unsettled question of law, and no precedent which must be reconsidered or overruled. See La. Supreme Court Rule X, § 1. The writ was apparently granted solely for the purpose of conducting a manifest error review of the facts of this particular case. This is directly contrary to this Court’s long-settled practice. As Justice Summers stated over forty years ago, “we grant writs only on questions of law.” Dick v. Phillips, 253 La. 366, 218 So.2d 299, 301 (1969); Porteous v. St. Ann’s Café & Deli, 97-837 (La.5/29/98), 713 So.2d 454, 456 n. 2 (“Under this Court’s standards for granting writs, the Court does not normally grant simply to review the facts of a case.”) Within the Louisiana judicial system’s three-tiered hierarchy, the Supreme Court’s institutional purpose is to provide guidance to the lower courts by clarifying the law, harmonizing inconsistent jurisprudence, and resolving disputed questions of public policy.[1] This opinion serves none of these purposes.
The Court’s decision to grant writs in this case is doubly perplexing because |gthe amount in controversy is relatively small compared to many other potentially worthy applications which we deny every week. Plaintiffs demand was $50,000, a modest figure which does not even meet the amount in controversy requirements necessary to justify a jury trial under La. Code of Civ. Proc. art. 1732. Our decision today sets no meaningful precedent, decides no novel issue of law, and corrects no manifest injustice. The decisions handed down today in this case and Trascher v. Territo, 11-2093 (La.5/8/12), 89 So.3d 357, suggest this Court has taken on the role of an error correcting court, even for relatively minor disputes. I fundamentally disagree with this newfound expansion of our discretionary docket, and I would recall the writ as improvidently granted.
Because a writ was granted and we are disposing of this case with a per curiam, I do find the trial court manifestly erred in casting the defendant with 100% of fault. Notwithstanding this finding, because writ denials do not make law, I still adhere to my view that we should not have granted a writ in this relatively “simple and routine” case. Howard v. Union Carbide Co., 09-2750 (La.10/19/10), 50 So.3d 1251, 1258 (per curiam) (Knoll, J., dissenting).
Turning to the merits of the case, the majority goes too far in finding plaintiffs inattentiveness was the sole factor in the accident and assigning him 100% of the fault. Defendant Advanced Emergency Medical Services is an ambulance company based ■ in and operating out of Webster Parish. After Hurricane Katrina devastated Plaquemines Parish and its EMS services, defendant signed a contract with the state to provide ambulance services in the southern part of the parish.[2] The ambulance involved in this accident had ongoing *378 transmission [ ¿¡problems and had been brought to New Orleans for repairs. On the way back to Plaquemines Parish on June 7, 2006, it broke down again. Although the ambulance was supplied with the appropriate cones and reflective markers, they were not set out, and the hazard lights were left off. Defendant did not call a tow truck or otherwise attempt to remove the vehicle. Instead, the ambulance was left, derelict and unmarked, on the edge of the right shoulder of Highway 23.
On the night of June 7, 2006, plaintiff was driving south on Highway 28 to pick up a friend. No street lights were operational because of the storm, and the night was pitch black. Plaintiff never clearly saw the ambulance before he hit it; he saw a “flash,” lost consciousness, and woke up some time later with blood pouring down his face. Plaintiffs injuries were extensive, and he incurred significant medical bills in addition to his general damages.
The per curiam presents the central question in this case as whether the ambulance was completely pulled off to the side of the road or whether it encroached over the white line. The evidence on this issue is uncertain and open to interpretation. The only photographs of the accident scene were taken well after the wreck. The tire skid marks show the ambulance’s tires were parked on the shoulder but, according to the testimony of defendant’s president, the “box” of the ambulance continues for three to three and one-half feet past the edge of the tires. Unfortunately, the investigating state trooper did not take measurements of the accident scene, so it is impossible to tell whether the skid marks were more or less than three and one-half feet from the white line.
The only other evidence regarding the ambulance’s position at the time of the accident was the testimony of Mark Gau-thier. About 45 minutes to an hour before plaintiffs accident, Gauthier was driving south in the right hand lane of 1 ¿Highway 23 when he came upon the ambulance parked “on the shoulder, right hand shoulder of the road but it was close, very close, if not on the white line.” Because there were no reflectors or flares, Gauthier did not see the ambulance until the last second, when it “caught me by surprise.” In order to avoid an accident, Gauthier “had to swerve to miss it” and “hit my brakes and moved out to the center lane to give em room.”
The trial court, relying on the (admittedly unclear) photographs and Gauthier’s testimony, found the ambulance was “not completely out of the travel lane.” The majority reverses, finding this is “not reasonable in light of the record reviewed in its entirety.” I disagree.
Gauthier explicitly testified the ambulance was “very close, if not on the white line” marking the travel lane, and he had to swerve partially into the center lane in order to avoid the ambulance. The trial court chose to credit his testimony. A basic principle of appellate review is that the “role of the fact-finder [is] to weigh the respective credibilities of the witnesses, and this court will not second-guess the credibility determinations of the trier of fact.” State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983). A trial court’s credibility determination may only be overturned where the testimony is “internally inconsistent or implausible on its face,” or there is objective evidence which conclusively discredits the testimony. Rosell v. ESCO, 549 So.2d 840, 844-5 (La.1989). Neither is true here. This Court is bound to accept the credibility determinations made by the finder of fact. There is sufficient evidence for a reasonable determination finding the ambulance encroached upon the travel lane of the high *379 way and created a potential danger for drivers.[3]
|sThere is significant record evidence supporting a finding of negligence on the part of the defendant. A reasonable driver would have made every attempt to get the ambulance as far away from the traveled portion of the road as possible, and would not leave it “very close to, if not on the white line.” As all the streetlights were out, a reasonable driver would have set out the cones and reflectors which were provided inside the vehicle.[4] Defendant neglected to contact a tow company to try to move the vehicle off the road before nighttime. These actions and failures to act fell below a reasonable standard of care, and it was well within the trial court’s discretion to find the defendant’s negligence was a proximate cause of plaintiffs accident.
The record also reflects plaintiffs negligence, but the per curiam greatly overstates the extent of plaintiffs fault. For instance, there is the issue of plaintiffs prescription drug use. Plaintiff was lawfully prescribed painkillers as a result of an earlier car accident. However, it is a careless misstatement of the record to claim, as the per curiam does, that “on the date of the accident [plaintiff] was taking various prescription narcotic drugs.” A review of the record reflects that, on the morning of the accident, plaintiff took one Lortab, in accordance with his prescription. He had also taken a Valium the night before the accident. There is no evidence that taking a single Lortab several hours earlier, and a single Valium the night before, would affect plaintiffs ability to drive a vehicle. The trial court was well within its wide discretion to find plaintiffs medication was irrelevant to this case.[5]
IfiThe per curiam also claims plaintiff was using his cell phone “immediately before the accident,” which caused him to be distracted. Plaintiff admitted to making a phone call approximately 3 to 4 miles away from the scene of the accident. Plaintiff was driving at 65 miles per hour, the posted speed limit, meaning he had been off the phone for 3 to 4 minutes by the time of the accident. Plaintiff explicitly denied being on his cell phone during or just before the accident:
Q: You were asked, other than driving, were you doing anything before the accident. This is my question: You weren’t on the cell phone or reaching for your cell phone. Is — is that what you’re saying?
A: That’s correct. I was not.
That being said, there is evidence of plaintiffs inattentiveness or carelessness. Given the poor condition of the roads after Katrina and the lack of streetlights, a reasonable driver should not have been driving at 65 miles per hour in such poor visibility. It is also unclear whether plaintiff had his headlights set to “bright,” which may have allowed him' to see the ambulance from slightly farther away.
Plaintiff bears some responsibility for not seeing the ambulance in time and *380 avoiding it, as Gauthier was able to do. However, plaintiffs contributing negligence does not give the defendant a free pass for its own inexplicably negligent behavior in leaving the ambulance in a place where it posed a serious threat to drivers. A driver who was “momentarily inattentive or careless” before an accident is not necessarily barred from all recovery.[6] Instead, where “several 17dangerous hazards combine to produce an accident, comparative fault is applicable.” Brown v. Beauregard Elec. Co-op., Inc., 94-512 (La.App. 3 Cir. 12/14/94), 647 So.2d 668, 671, writ denied, 95-122 (La.3/10/95), 650 So.2d 1186.
This case is reminiscent of Monceaux v. Jennings Rice Drier, Inc., 590 So.2d 672 (La.App. 3 Cir.1991), writ denied, 592 So.2d 1289 (La.1992).[7] Plaintiff Johanna Monceaux was killed when her car crossed the white line and hit a disabled rice truck left on the shoulder of 1-10 without any markers or road flares. Id. at 673. There, as here, the negligence of both plaintiff and defendant were substantial factors in causing the accident. While Monceaux bore some of the blame, as witnesses saw her vehicle veer slightly onto the shoulder before the accident, the defendant was also found at fault. As the court of appeal held:
There is no doubt that the unmarked, unlighted truck parked on the side of I-10 at night posed a dangerous traffic situation and subjected motorists to an unreasonable risk of harm.
Id. at 675. After a careful review of the record, the court of appeal allocated 50% of the fault to defendant, 25% to plaintiff, and 25% to the State.[8]
As in the Monceaux case, I would apportion fault between plaintiff and defendant. When modifying a trial court’s allocation of fault between negligent parties, this Court does not perform a de novo review. Instead, we decrease (or increase) the erroneous allocation of fault to the lowest percentage which could be found by a reasonable finder of fact. Clement v. Frey, 95-1119, 95-1163 (La.1/16/96), 666 So.2d 607, 609-10.
In conclusion, I believe this case does not present any issues worthy of this Court’s consideration and would recall the writ as improvidently granted. Failing | sthat, I would find the trial court committed manifest error in its allocation of 100% fault to the defendant and would apportion fault between the plaintiff and the defendant.

. See Daniel Meador, American Courts at 15-16(1991).

. Defendant asserts an affirmative defense under La.Rev.Stat. § 9:2800.17 and § 29:735, which provide limited immunities for injuries related to emergency preparedness activities. The majority does not reach this issue, so I do not address it in detail other than to note that any claim of statutory immunity must be strictly construed. Monteville v. Terrebonne Parish, 567 So.2d 1097, 1101 (La.1990). Under a narrow interpretation of the statutes, I find the asserted immunities are inapplicable under the facts at hand because plaintiff’s injury did not arise from an “emergency preparedness activity” on the part of the defendant.

. Indeed, the ambulance caused one near-accident and one actual accident within a few hours of breaking down; this is almost per se evidence of the serious danger it posed.

. The body of the ambulance was marked with reflective tape known as Scotchlite. The testimony was that Scotchlite reflects light from anywhere from 200 to 500 feet away, depending on conditions. At 65 miles per hour, 200 feet of visibility provides two seconds of warning. This reflective tape is no substitute for flashing markers or road flares.

.Although plaintiff did.test positive for amphetamines, he testified that he had not taken any amphetamines for two to three days before the accident and was not affected by them- on the night of June 7, 2006. Plaintiff's testimony regarding his drug intake was consistent with the toxicology tests taken after the accident at West Jefferson Medical Center.

. Monceaux v. Jennings Rice Drier, Inc., 590 So.2d 672, 675 (La.App. 3 Cir.1991), writ denied, 592 So.2d 1289 (La.1992); Trahan v. State, Dept. of Transportation and Development, 536 So.2d 1269, 1274-75 (La.App. 3 Cir. 1988), writ denied, 541 So.2d 854 (La.1989).

. I was a member of the Third Circuit panel which reviewed this case on appeal.

. The State’s liability was based on the failure of the State Police to inspect and secure the broken-down rice truck after being contacted and promising to do so.